CARRIE M. STONE, In Equity

vs.

UNITED STATES ENVELOPE COMPANY, et als.

Cumberland.    Opinion November 18, 1920.

*Preferential rights of holders of preferred stock, and rights of holders of common stock,*
*are fixed by contract which is commonly set forth in the corporate by-laws.*
*Preferred stock prima facie, nothing to the contrary appearing, carries*
*the implication that the preferential rights of the holders*
*thereof are given in lieu of and to the exclusion of*
*the equality in participation which*
*would otherwise exist.*

The United States Envelope Co. has forty thousand shares seven per cent cumulative preferred and ten thousand shares common stock. These classes of stock have equal voting power share for share. All of this stock having been issued and sold at par except twenty-five hundred shares of common stock, a vote was passed to issue this twenty-five hundred shares and to give to all stockholders both common and preferred the preemptive right to buy it in proportion to their holdings at one hundred and fifty dollars per share. This price was substantially less than the actual value or market value of the stock.

This suit is brought by a common stockholder to restrain the corporation from giving to the preferred stockholders the right to purchase stock at less than its value. The plaintiff contends that to give preferred stockholders the right to purchase stock at a fixed price which is less than its value is in effect to pay to the preferred stockholders a dividend in addition to the preferential dividend which had been regularly declared and paid. The defendant contends that the preferred stockholders are not limited to their preferential dividends, but are entitled to share the surplus with common stockholders.

*Held:*

That the respective rights of common and preferred stock are fixed by a contract which is commonly set forth in the corporate by-laws. Within wide limitations any preferential rights provided for in the by-laws will be given effect to by courts.

Where nothing to the contrary appears the creation of preferred stock prima facie implies that the preferential rights of the stockholders are given in lieu of and to the exclusion of the equality in participation which would otherwise exist.

To carry into effect the vote above referred to, and to sell stock to preferred stock-
holders at less than its value is to violate the rights of the common stockholders.

On report.   This is a bill in equity brought by Carrie M. Stone,
one of the holders of common shares in the capital stock of the defend-
ant corporation, seeking an injunction to restrain the defendants
from issuing to the preferred and common stockholders in proportion
to the number of shares of stock, either preferred or common, held
by each, 2,500 shares of the common stock of the corporation of the
par value of $100 each.   The cause was heard upon bill, answers,
replications and stipulations as to evidence.   By agreement of
parties the case was reported to the Law Court for determination
upon bill, answers, replications, stipulations, and so much of the
evidence as was legally admissible.   Bill sustained.   Decree to be
signed by single Justice in accordance with this opinion.

Case is stated more fully in the opinion.

*Verrill, Hale, Booth & Ives,* for complainant.

*Payson & Virgin,* for respondents.

SITTING:   CORNISH, C. J., HANSON, PHILBROOK, DUNN, MORRILL,
DEASY, JJ.

DEASY, J.   Equity.   The part of the by-laws of the United States
Envelope Co. material to the present case is as follows:—

"Article XVI.   Capital.

The shares of this corporation shall be divided as follows, viz:
10,000 common shares, 40,000 preferred shares.

The preferred shares shall be entitled to cumulative dividends
payable semi-annually out of the net earnings of the corporation, at
the rate of seven per cent, per annum, before any dividends are
declared or paid on the common shares, and in case of non-payment
in full of any such semi-annual dividends, the portions unpaid shall
be paid out of subsequent net earnings prior to the claims of the
common shares, but without interest on deferred payments, and the
preferred shares shall have preference over the common shares in any
distribution of the assets of the corporation in liquidation."

The by-laws also give to the common and preferred stockholders
equal voting power share for share and provide that "any shares of
stock not subscribed for at the first meeting may be issued by the
Board of Directors."

All the stock has been issued and sold for cash at par except 2500 shares of common stock. A vote has been passed to issue this stock and to offer it to stockholders both common and preferred, in proportion to their holdings, at $150 per share, a price which the case shows to be materially below its value.

The plaintiff holding 1000 shares of the common stock asks that the defendant may be enjoined from carrying this vote into effect on the ground that to give the preferred shareholders a preemptive right to purchase common stock at less than its value is in effect to pay them a dividend in addition to the seven per cent provided for in the by-laws and which they have received. The defendants contend that the preferred stockholders notwithstanding that they have received their preferential dividends are entitled to share in the surplus equally with the holders of the common stock.

The respective rights of holders of common and preferred stock are fixed by contract. *Spear* v. *Lime Co.,* 113 Maine, 285.

The contract is commonly contained in the corporate by-laws. Within wide limitations any preferential rights provided for in the by-laws will be given effect to by courts.

The question at issue in this case relates to the extent and limits of the rights that prima facie belong to preferred stock as such i. e. rights and limitations that, in the absence of express provisions, are implied.

The plaintiff contends that where a say seven per cent preferred stockholding is created with no stipulation in reference to participation in surplus, the preferred stockholder is entitled to seven per cent, and that all the rest of the profits available for distribution belong to the holders of common stock; on the other hand the defendant says that after payment of the seven per cent dividend and perhaps an equal dividend upon the common stock, the balance of profits to be distributed must go to all the stockholders both common and preferred in proportion to their holdings and without discrimination.

Both parties present authorities sustaining their respective contentions. There are two opposing theories each of which has judicial support. One theory is that the preferred stockholder presumptively yields nothing in compensation for the benefits which he receives; that he has and holds all the rights of the common shareholder and in addition has his preferential rights.

Upon this theory the defendant relies and in support of it cites *Jones* v. *Railroad Co.*, 67 N. H., 234 (1893) and a series of cases in Pennsylvania the latest of which, *Englander* v. *Osborne*, 104 Atl., 614, affirms the earlier decisions.

Clark and Marshall on Corporations and also Cook, 6th Ed., are cited by the defendant. These works were written and published before the cases of *Niles* v. *Ludlow Valve Mfg. Co.*, and *Will* v. *U. L. P. Co.*, (infra) were decided. But even the 6th edition of Cook says that "the question is an open one" Section 269, Page 1.

The other theory which we believe to be better and supported by the weight of authority is that in receiving the greater security of his preferential rights, the preferred stockholder impliedly agrees to accept such rights in lieu of equal participation.

The maxim "expressio unius" &c. applies to this case and is decisive.

The parties by a contract embodied in the by-laws have provided for the preferred stockholders a seven per cent preferential dividend and in case of liquidation one hundred per cent. This excludes other participation.

The following cases sustain this view:

In the re-organization of the Baltimore & Ohio Railroad Co. it was provided that "The holders of the preferred stock . . . . are entitled to receive in each year out of the surplus net profits of the company for the current year such yearly dividend (non-cumulative) as the board of directors of said railroad company may declare, up to, but not exceeding four per centum per annum before any dividends shall be set apart or paid upon the common stock." It was held that the preferred stockholders were limited to their four per cent and were not entitled to share in the surplus earnings. The court says: "It is true that some of the text writers do intimate that such may be the law (that preferred shareholders are entitled to share in surplus) but the cases cited are those where there is an express provision for the participation in the surplus and fall far short of sustaining the proposition by which the appellants here seek to impose the additional quality upon the preferred stock." *Scott* v. *B. & O. R. Co.*, (Md.), 49 Atl., 327, (1901).

The Ludlow Valve Mfg. Co. having common and preferred stock voted to its common shareholders a stock dividend. The plaintiff, a holder of preferred stock, brought an action claiming that the stock should be distributed not to common stockholders only, but to preferred shareholders as well.

In the District Court a verdict was directed for the defendant. (196 Fed., 994). The case was carried to the Circuit Court of Appeals which court by a majority opinion sustained the District Court. "These (common) stockholders have the burden of administration upon them; if the corporation is unsuccessful, the loss falls upon them; if successful they receive the benefits. We think that when the preferred stockholders receive the large interest of eight per cent provided for in the certificate they receive all to which they are entitled from the income of the corporation."

*Niles* v. *Ludlow Valve Mfg. Co.*, 202 Fed., 141. (1912).

The English Court of Appeals in a decision affirmed by the House of Lords holds "that when you find the word 'dividend' used in the way in which the expression is used in the resolution and defined to be a 'cumulative preferential dividend' you have something so definitely pointed to as to suggest that it contains the whole of what the shareholder is to look to from the Company."

*Will* v. *United Lankat Plantations Co.*, L. R. 2 Ch. Div. (1912), 571; House of Lords, Rep., 1914 A. C., 11.

The New Jersey case of *Bassett* v. *U. S. Foundry Co.*, 73 Atl., 514, inferentially but none the less significantly supports the same view.

Independent reasoning as well as what we deem to be the preponderance of authority sustains the plaintiff's position. Words in contracts, as well as in statutes, should ordinarily be construed "according to the common meaning of the language." Surely the phrase "preferred stock" holds out to the ear of the ordinary investor no promise of participation in earnings beyond his preferential dividend. That this is true has been recognized by authorities.

"It is generally assumed that where preferred shares are given a fixed preferential dividend at a specified rate, that impliedly negatives any right to take any further dividends." Palmer's Company Precedents 11th Ed., 814.

"Preferential shares and stock are ordinarily spoken of and regarded, and I think properly regarded, as shares or stock which carry a fixed preferential dividend and are not entitled to anything more." *Will* v. *United Lankat Plantations Co.*, supra.

Even Cook whose work on Corporations is repeatedly and confidently cited by the defendants says: "Theoretically it is difficult to justify this conclusion, but practically it is true that the investing

public assume and understand that preferred stock is never entitled to more than its specified and fixed dividends." Cook 7th Ed., Section 269 note.

There are disclosed in this case significant circumstances showing that the above opinion harmonizes with the actual intention of the persons interested in the organization of this corporation.

We put the decision however upon the ground that where nothing to the contrary appears the creation of preferred stock prima facie implies that the preferential rights of the stockholder are given in lieu of and to the exclusion of the equality in participation which would otherwise exist.

Some cases indicate a distinction in respect to the relative rights of common and preferred stockholders, between an earned surplus and an "unearned increment" i. e. a surplus arising from an increase in value of corporate property.

It is not necessary to here consider this distinction inasmuch as the surplus in the present case is admittedly an accumulation of corporate earnings.

> *Bill sustained with costs.*
> *Decree to be signed by single Justice*
> *in accordance with this opinion.*