# Wytheville.

## Thomas Branch & Company, et als., v. Riverside and Dan River Cotton Mills, Inc.

### June 12, 1924.

1. Stock and Stockholders—*Rights of Preferred Stockholders—Subscription to New Issue of Stock.*—Under section 1105-a of the Code of 1904 preferred stockholders and common stockholders stand on the same footing and have equal rights and privileges, except so far as the same are enlarged or limited by the charter of the corporation, by statute, or by some by-law. In the absence of such enlargement or limitation, the holders of preferred stock have, upon the increase of the capital stock, the same right to purchase the new stock as the holders of common stock.

2. Stock and Stockholders—*Minority Stockholders—Right to Subscribe to New Stock.*—Whenever the capital stock of a corporation is increased under charter or statutory authority, and issued *for money only,* each of the existing stockholders has the preemptive right to an opportunity to subscribe for or to purchase shares of the new stock in proportion to the original stock held by him, in the absence of a statute or other valid governing instrument making a different rule; and, if he has not waived such right and is deprived of it, he may recover his damages in an action at law, or enforce his rights in equity, according to the circumstances. In Virginia there is no statute limiting this right of minority stockholders, and in the instant case the charter contained no such provision.

3. Stock and Stockholders—*Minority Stockholders—Right to Subscribe to New Stock.*—But under Code of 1904, section 1105-e, subsection 9, where subscriptions to the capital stock of a corporation are to be paid in land or other property, real or personal, leases, options, rights, easements, contracts, labor, or services, the doctrine as to the rights of minority stockholders to subscribe to the new stock does not apply.

4. Statutes—*Construction—Adoption of Statute of Another State—New Jersey Corporation Law—Right of Minority Stockholders to Subscribe to New Stock.*—The Virginia corporation law is in practically the same words as the New Jersey law, except that the New Jersey law does not contain paragraph 9, section 1105-a, Code of 1904. In adopting

the New Jersey law, the construction placed upon it by the New Jersey courts will be considered as having been adopted also, and the New Jersey cases uniformly recognize and protect the preemptive right of minority stockholders to subscribe to new stock; and there is nothing in paragraph 9 of section 1105-a of the Code of 1904 which could modify this ruling as to the rights of minority stockholders.

5. Stock and Stockholders—*Preferred Stockholders—Right to Subscribe to New Stock—Case at Bar.*—In the instant case the charter of defendant corporation provided that "the preferred stock of the Riverside and Dan River Mills shall bear only six per cent dividends, but shall be cumulative, and shall be preferred only as to dividends." The language of the charter, "and shall be preferred only as to dividends," by implication provides that in all other respects the holder of preferred stock shall stand on the same footing as the owner of common stock. The expression of a preference, and a limitation as to dividends, excludes them as to all other rights of the preferred stockholder. It is clear that the preference does not deprive the preferred stockholder of his preemptive right to subscribe to his *pro rata* share of a new issue of stock. And an examination of the statute law discloses nothing which limits the rights of the preferred stockholders, beyond the limitation as to dividends set forth in the charter.

6. Stock and Stockholders—*New Stock—Sale of New Stock to Common Stockholders not Equivalent to the Declaration of a Dividend to Them—Case at Bar.*—In the instant case the sale of 20,000 shares of new stock to the common stockholders at $100.00 per share to the exclusion of the preferred stockholders, was not, in legal effect, the declaration of a dividend to the common stockholders out of the profits of the corporation.

7. Corporations—*Acceptance of an Amendment to Charter Subjects Corporation to Laws in Force.*—Under paragraph 8 of section 1105-a of the Code of 1904, the acceptance of an amendment to its charter compels a corporation to hold its charter and all amendments thereof subject to the requirements, terms, and conditions of the Virginia Constitution, and of any laws passed in pursuance thereof, so far as they are applicable to corporations.

8. Stock and Stockholders—*Increase of Capital Stock—Right of Preferred Stockholders to Subscribe—Authority to Increase Stock—Corporation Commission.*—In the instant case an examination of the provisions of sections 1105-a and 1105-e of the Code of 1904 discloses no reference to the right of any one class to subscribe to increased capital stock of a corporation to the exclusion of any other class of stockholders. Besides, under the provisions of these statutes neither the stockholders nor directors, nor both, can increase the capital stock, change the par value of the shares thereof, create two or more classes of

stock, with preferences and voting powers, or restrictions or qualifications thereof, unless such authority be granted by the Corporation Commission in an amendment to the charter, or unless such preferences, restrictions, or qualifications be stated and expressed in the charter, certificate of incorporation, or an amendment thereto.

9. STOCK AND STOCKHOLDERS—*Equitable Relief—Unauthorized Issuance of Stock.*—Where it is shown that it is the purpose of a corporation to issue unissued stock to persons who are not entitled to the same, equity will intervene and protect the rights of the parties complaining.

10. STOCK AND STOCKHOLDERS—*New Stock—Remedy of Stockholders not Permitted to Subscribe.*—Where preferred stockholders of a corporation who were not permitted to subscribe to an issue of new stock delayed the institution of court proceedings until after the stock was issued to the holders of the common stock, a court of equity is powerless to direct an additional issue of stock, and by their delay having placed themselves in such a position, the preferred stockholders' remedy is at law, and they cannot be heard to say that it is inadequate.

Appeal from a decree of the Circuit Court of Pittsylvania county. Decree for defendants. Complainants appeal.

*Reversed and remanded for further proceedings.*

The opinion states the case.

*Eugene Withers* and *Legh R. Page*, for the appellants.

*Harris & Harvey*, for the appellees.

WEST, J., delivered the opinion of the court.

Thomas Branch & Company and others, owners of 840 shares of preferred stock out of 100,000 total shares of original preferred and common stock of the Riverside and Dan River Cotton Mills, Incorporated, suing on behalf of themselves and all other holders of preferred

stock of the corporation, who may make themselves parties to the suit and pay their proportionate share of the costs, filed their bill of complaint against the corporation and the members of its board of directors.

The bill alleges, among other things, that the company had outstanding $4,000,000.00 of common stock and $6,000,000.00 of preferred stock; that after notice to all stockholders, common and preferred, at a special meeting held January 23, 1919, at which more than three-fourths of the shares were represented, the stockholders by unanimous vote requested the State Corporation Commission to amend the charter of the company so as to authorize the issuance of $7,500,000.00 each of common and preferred stock, which was an increase of 15,000 shares of preferred and 35,000 shares of common stock; that the charter was amended accordingly; that the stockholders and directors authorized the sale of $2,000,000.00 of common stock; that the directors authorized the issue and sale of 20,000 shares of common stock to the holders of common stock in proportion to their respective holdings at the par value of $100.00 per share, payable in cash, or in installments, with interest, making the capital stock $6,000,000.00 common and $6,000,000.00 preferred, a total of $12,-000,000.00; that complainants did not attend the stockholders' meeting of January 23, 1919, but demanded their proportionate share of the additional 20,000 shares of the authorized issue of common stock, but not of preferred stock, and offered to pay for the same; that the actual value of the additional stock was far in excess of $100.00 per share.

The bill further alleges that a large majority of the directors were holders of the common stock, and that the directors, in disposing of the additional stock to common stockholders, acted for their own interest and

against the best interest of the company, and in a manner destructive of the rights of the holders of the preferred stock of the corporation.

It also appears from the bill that certificates for the shares of the preferred stock are in the following language:

"This is to certify, that _____ is entitled to _____ shares of the preferred capital stock of Riverside and Dan River Cotton Mills, Incorporated, of Pittsylvania county, Virginia, of the par value of one hundred dollars, each; transferable only on the books of the company in person or by attorney on the surrender of this certificate.

"Said stock entitles the holder thereof to receive annually, out of the profits of the company, a dividend of six per cent thereon, one-half thereof on the first of January, and the other half on the first of July of each year, to be preferred and paid out of the profits of the company before any dividend shall be declared or paid on the common stock of said company.

"But said stock shall not entitle the holder thereof to receive, out of the profits of the company, any greater or other dividend than said six per cent annually.

"Said six per cent dividend shall be accumulative, shall be declared three per cent, semi-annually, and as often as in any year there shall not be profits made, or be accumulation of profits on hand and under the control of the company, sufficient to pay the same, it shall be paid from such profits or accumulation of profits, as soon as there shall be sufficient on hand to do so.

"Witness the seal of the company and the signature ·of the president and secretary and treasurer, this_____ _____day of _____, 19_____.

(Seal)          _____

"President."

The prayer of the bill is, that the contract under which the preferred stock of the corporation was issued may be construed by the court, that the rights of the holders of preferred stock may be adjudicated, protected and enforced; and that the corporation may be required to issue to complainants common stock of the corporation to the extent of fifty per cent of their respective holdings of preferred stock in the corporation.

The defendants demurred to the bill on the following grounds:

"1. That the said bill is multifarious in that it is brought against a corporation and a number of individuals and that the nature of the relief sought against the corporation is of a different nature from that sought against the individuals, and that it alleges several distinct causes of action; and that several persons, having separate and distinct causes of action, have joined as plaintiffs in one suit.

"2. That the wrongs complained of as having been committed by the directors of the Riverside and Dan River Cotton Mills, Incorporated, and by the individual defendants named in the said bill, if committed or done at all, were wrongs against the Riverside and Dan River Cotton Mills, Incorporated, and not against its stockholders as such, and that nothing is alleged or shown which would give to the plaintiffs any right or authority to institute this suit for or on behalf of the said corporation.

"3. That the plaintiffs have full, adequate and complete remedy at law for the wrongs alleged in the bill.

"4. That no facts or circumstances are alleged or shown in said bill which would entitle the plaintiffs to the relief prayed for.

"5. The statute law of Virginia having conferred upon the board of directors of the Riverside and Dan

River Cotton Mills, Incorporated, authority to make such disposition of the increased capital stock of the said corporation from time to time and upon such terms and conditions and for such consideration as might be deemed for the best interest of the said corporation, and no actual fraud having been alleged in the said bill against the board of directors in the disposition of the increased capital stock of the said corporation, this court is without jurisdiction to supervise, control or overrule the discretion vested in the said board of directors as aforesaid.

"6. This court cannot, by any decree it may enter, furnish the relief asked for in the bill."

The trial court entered a decree sustaining the demurrer and dismissing the bill. From that decree this appeal was allowed.

The grounds of demurrer raise two questions:

(a) Did the board of directors, upon the amendment of the charter authorizing an increase in capital stock, have the authority, in its discretion, to sell such additional capital stock to the common stockholders alone, to the exclusion of the preferred stockholders?

(b) If not, can the complainants obtain in this suit the relief prayed for?

*Authority of Board of Directors.*

[1] Section 1105-a, paragraph 8, Code of 1904, provides that the charter of any corporation existing at the time of passage of that act may be altered or amended, provided that any such corporation which shall thereafter accept an amendment of its charter shall be conclusively presumed to have thereby agreed to thereafter hold its charter and franchise, and all amendments thereof, under the provisions, and subject to all

the requirements, terms and conditions of the Constitution of Virginia, and of any laws passed in pursuance thereof, so far as the same may be applicable to such corporation.

Paragraph 2 of the same section provides that if there be more than one class of stock created by the charter, a description of the different classes thereof, with the terms on which such different classes are created, shall be set forth *therein.*

It follows that the stockholders of each class stand on the same footing and have equal rights and privileges, except so far as the same are enlarged or limited by the charter or the statute, or some by-law passed by authority thereof.

In the absence of such enlargement or limitation the holders of preferred stock have, upon the increase of the capital stock, the same right to purchase the new stock as the holders of common stock.

The authorities are to the same effect, as follows:

In 4 Thompson on Corporations, sections 264-7: "There can be no doubt that as a general proposition, the holders of preferred stock have, upon the increase of the capital stock, the same right to purchase the new stock as the holders of common stock, and this regardless of the fact that the preferred stock is limited as to dividends."

In 1 Cook on Corporations (6th ed.), section 270: "A holder of preferred stock is entitled to subscribe for his proportionate part of the new stock, even though the preferred stock is limited absolutely as to dividends, and the new stock is common stock."

In 6 Fletcher Cyc. Corporations, section 3629: "Where a corporation increases its capital stock, holders of preferred stock have the same privilege as holders of common stock to subscribe for and purchase a pro-

portionate amount of new stock, unless there is some provision to the contrary in their contract, and it makes no difference that the amount of the dividends is limited."

In 7 R. C. L., section 176: "It is a general rule that when a corporation increases its capital stock, those who are stockholders when the increase is made are entitled to subscribe to the new issue in proportion to their original holdings before subscriptions are received from strangers, and that a shareholder's proportionate share cannot be allotted to other shareholders until he has been given an opportunity to subscribe;" citing *Gray* v. *Portland Bank*, 3 Mass. 364, 3 Am. Dec. 156; *Pratt* v. *American Bell Tel. Co.*, 141 Mass. 225, 5 N. E. 307, 55 Am. Rep. 465; *Stokes* v. *Continental Trust Co.*, 186 N. Y. 285, 78 N. E. 1090, 12 L. R. A. (N. S.) 969, 9 Ann. Cas. 738, and other cases.

"* * * The stockholder has the right to preserve the proportionate interest in the corporation first acquired by him. To dispose of the new stock to strangers or other stockholders, without offering him an opportunity to take his *pro rata* share, would be, without his consent, to impair his interest and influence in the corporation and diminish the relative value of his holdings. Every shareholder, of whatever class, has a right to share and to share equally, unless one class has by contract been given a preference."

In Fletcher Cyc. Corporations, section 3640: "When the assets of the corporation are distributed among its stockholders, not by way of dividends, but on a dissolution and winding up, the holders of preferred stock have the same, and no greater, right to share in the assets as holders of common stock, unless by statute or by their agreement with the corporation, they are

given a preference, not only in the payment of dividends, but also in the distribution of capital."

*Idem*, section 3637: "Preferred stockholders have the same rights with respect to the management of the corporation as common stockholders, except so far as they may be excluded by their contract, citing *Lockhart* v. *Van Alstyne*, 31 Mich. 76, 18 Am. Rep. 156; *Thompson* v. *Erie Ry. Co.*, 42 How. Pr. (N. Y.) 68.

It was held by the Supreme Court of New Hampshire, *Jones* v. *Concord & Montreal Railroad*, 67 N. H., p. 119, 38 Atl. 120, that an issue of new shares of stock on an increase of the capital of a corporation is a partial division of the common property, which can be taken from the original shareholders only by their consent or by legal process. The stock under consideration in this case was stock in a railroad company and the court said: "When * * new stock (preferred, common, or deferred) is issued, each stockholder is entitled to a portion of it, not merely because the issue may affect his right to dividends, but also because the new stock includes an undivided part of the road, of every part of which he is owner, and because every shred of his title is as indefeasible and inviolable as the whole of it would be if he were the sole unincorporated owner of the road."

In Am. & Eng. Ency. of Law (2d ed.), at pages 947-948, this is said: "Those who are shareholders when an increase of capital stock is effected enjoy the right to subscribe to the new stock in proportion to their original holdings, and before subscriptions may be received from outsiders. This right may be curtailed by charter provisions, or limited as to the time within which it is to be exercised; but the directors cannot deprive a stockholder of such right, or burden it with conditions unauthorized by the charter."

In *Luther* v. *Luther*, 118 Wis. 112, 94 N. W. 69, 99 Am. St. Rep. 977, it was held:

"In an established and going corporation an increase of capital stock, accomplished either by formal increase of an amount originally authorized, or by the issue of what had originally been withheld, though within the authorized amount, without first giving an opportunity to all existing stockholders to take their proportionate shares of such increase, is wholly beyond the power not only of the directors but also of a mere majority of the stockholders.

"If directors manage property of a corporation so as to give one part of its shareholders a benefit and advantage over, or at the expense of another part, it is a breach of duty, especially when the directors themselves belong to the benefited class, which may be remedied in equity."

[2-4] The Virginia corporation law is in practically the same words as the New Jersey law, except that the New Jersey law does not contain paragraph 9, section 1105-a, Code of Virginia 1904. See Public Laws of New Jersey, 1908, page 127.

In adopting the New Jersey law, the construction placed upon it by the New Jersey courts will be considered as having been adopted also. *New, etc.,* v. *Rockingham*, 118 Va. 140, 86 S. E. 874.

The cases in New Jersey uniformly recognize and protect the preemptive right of minority stockholders to subscribe to new stock. *Way* v. *Am. Grease Co.*, 60 N. J. Eq. 263, 47 Atl. 44; *Wall* v. *Utah Copper Co.*, 70 N. J. Eq. 17, 62 Atl. 533; *Schmidt* v. *Marconi Wireless Tel. Co.*, 86 N. J. Law 183, 90 Atl. 1017, Ann. Cas. 1918-B, 131; *General Inv. Co.* v. *Bethlehem Steel Corporation*, 88 N. J. Eq. 237, 102 Atl. 252.

We find nothing in paragraph 9, section 1105-a of the

Virginia law, which, if embodied in the New Jersey law, should cause the courts of that State to modify their rulings as to the rights of minority stockholders.

In 14 Corpus Juris, section 523, page 395, the law is stated thus: "Whenever the capital stock of a corporation is increased under charter or statutory authority, and issued *for money only*, each of the existing stockholders has the preemptive right * * * to an opportunity to subscribe for or to purchase shares of the new stock in proportion to the original stock held by him, in the absence of a statute or other valid governing instrument making a different rule; and if he has not waived such right and is deprived of it, he may recover his damages in an action at law, or enforce his rights in equity, according to the circumstances."

There is no such statute in Virginia, and, as will hereafter appear, the charter contains no such provision.

Of course, under the Virginia statute, subsection 9 of section 1105 (e), where subscriptions to the capital stock of a corporation are to be paid in land or other property, real or personal, leases, options, rights, easements, contracts, labor, or services, the doctrine laid down in 14 C. J., *supra*, does not apply.

What limitations or priorities have been engrafted upon the shares of preferred stock in the instant case?

As appears from paragraph 2, section 1105-a, above referred to, a description of the different classes of stock, with the terms on which the same are created, must be stated in the *charter*.

[5] The charter of the defendant corporation provides that "the preferred stock of the Riverside and Dan River Mills shall bear only six per cent dividends, but shall be cumulative, and shall be preferred only as to dividends."

While the language used in the certificate for shares

of preferred stock, *supra*, is not the same as that contained in the charter, the charter provision is paramount.

The language of the charter, "and shall be preferred only as to dividends," by implication provides that in all other respects the holder of preferred stock shall stand on the same footing as the owner of common stock. The expression of a preference, and a limitation as to dividends, excludes them as to all other rights of the preferred stockholder. It is clear that the preference does not deprive the preferred stockholder of his preemptive right to subscribe to his *pro rata* share of the new issue of stock. The object and purpose of the limitation was to prevent the holders of preferred stock from receiving a dividend in excess of six per cent upon preferred stock, and not to preclude them from becoming holders of common stock, or from receiving the dividend on common stock which other holders of common stock might receive.

[6] The sale of 20,000 shares of new stock to the common stockholders at $100.00 per share was not, as contended, in legal effect, the declaring of a dividend to them out of the profits of the corporation. The transaction left the undivided profits untouched and added $2,000,000.00 to the treasury of the corporation as capital. If the increased stock had been allotted to all stockholders in proportion to their holdings, the ownership of the corporate assets, as between the preferred and common stockholders, would have remained in the same ratio, and the undivided profits would have remained undisturbed.

It is manifest that the preference contained in the charter and in the certificate of the six per cent preferred stock quoted above, applies only to the dividend. As to the principal, the holders of preferred stock have

only the rights of common stockholders, and upon dissolution would be entitled only to share equally with them in the distribution of the assets of the corporation.

[7] Since under paragraph 8 of section 1105-a of the Code of 1904, the acceptance of the amendment to its charter compelled the corporation to hold its charter and all amendments thereof subject to the requirements, terms and conditions of the Virginia Constitution, and of any laws passed in pursuance thereof, so far as applicable to the corporation, it is important to consider the statutes of Virginia in force at the time, to determine the rights of preferred stockholders.

Paragraph 7 of section 1105-a of the Code of 1904 authorizes a corporation, upon proper proceedings by the board of directors and stockholders, including an affirmative vote of two-thirds in interest of each class of stockholders having voting power, as set out in said paragraph, to apply to the State Corporation Commission for an amendment to its charter authorizing it to change the par value of the shares, create one or more classes of preferred stock and make such other amendments, changes or alterations as may be desired. The certificate required by the statute must be presented to the commission, which shall ascertain and declare whether the company is entitled to the amendment or alteration set forth in the certificate and shall issue or refuse the same accordingly.

The charter contains no provision as to preferred stock, except the one quoted, *supra.* And the corporation has not applied for an amendment to its charter, under this section, by which it could change the par value of its shares of stock, or otherwise impair the value of its preferred stock.

Paragraph 20 of section 1105-e of the Code of 1904 provides: "Unless it shall have been otherwise pro-

vided in the charter, certificate of incorporation, or in the articles of association, or in an amendment or by-law, each person in whose name stock shall stand upon the books of any corporation * * * shall be entitled to one vote * * * for each share of stock appearing in his name on said books."

Paragraph 8 of section 1105-e reads as follows: "The power of making and altering by-laws shall be in the stockholders; but any corporation may, in the certificate of incorporation, or in its articles of association, or by resolution of its stockholders, confer that power upon the directors. By-laws made by directors under powers so conferred may be altered or repealed by the stockholders."

Paragraph 9 of section 1105-a of the Code of 1904, setting forth how a corporation may increase its capital stock, after prescribing the action to be taken by the board of directors and the stockholders and the certificate to be presented to the State Corporation Commission, provides, that when the Commission shall have ascertained and declared that the corporation is entitled to make such increase in its capital stock and issued a certificate for such increase; and the certificate has been lodged for recordation, the charter shall stand so amended and the increase in capital stock shall become effective, and "* * the board of directors may proceed to dispose of the capital stock, as so increased, upon such terms and conditions and for such consideration as they may deem for the best interest of the said corporation * *."

Paragraph 13, section 1105-a, Code 1904 (section 3792, Code 1919), provides as follows: "Every corporation shall have power to create two or more kinds of stock, of such classes, with such designations, preferences and voting powers, or restrictions, or qualifica-

tions thereof, as shall be stated and expressed in the charter, certificate of incorporation, or articles of association, or in any amendment thereof; and the power to increase or decrease the stock, as elsewhere provided, shall apply to all or any of the classes of stock. Any preferred stock that may be issued may, if desired, be made subject to redemption at any time after three years from the issue thereof at a price not less than par, and the holders thereof shall be entitled to receive and the corporation bound to pay thereon dividends at such rates and on such conditions as shall be stated in its charter, or any amendment thereof, or in the original or amended certificate of incorporation, or articles of association, or in an amendment thereof; and such dividends may be made payable before any dividends shall be set apart or paid on the common stock, and such dividends may be made cumulative."

It is clear that the corporation cannot exercise any of the powers conferred upon it by this section, except where the authority to do so is expressed in its charter or some amendment thereto.

Paragraph 61 of section 1105-e of the Code of 1904, reads: "This act, or any part thereof, may be amended or repealed at the pleasure of the General Assembly and every corporation created under this act shall be bound by such amendments, but such amendment or repeal shall not take away or impair any remedy against any such corporation or its officers for any liability which shall have been previously incurred; this act and all amendments thereof shall be a part of the charter of every corporation formed hereunder, except so far as the same are inapplicable and inappropriate to the subjects of such corporation."

We have made reference to the provisions of the statutes which have any bearing upon the matters at

issue. We find nothing which limits the rights of the preferred stockholders, beyond the limitations as to dividends set forth in the charter, above referred to.

Paragraph 9, section 1105-a, *supra,* did not require the directors or stockholders to certify to the Commission that the increased capital stock would be sold only to the holders of common stock. And it does not clearly appear from the bill of complaint that the question of restricting the sale to *the common stockholders* was ever voted upon by the stockholders.

Replying to the letter of Thomas Branch & Company, dated January 22, 1919, the corporation wrote them on January 24, 1919, that the vote of the stockholders was unanimous, that the Corporation Commission be requested to *amend the charter so as to authorize the issuance* of $7,500,000.00 each common and preferred stock; and that the directors and stockholders had authorized the sale of $2,000,000.00 common stock, making the capital $6,000,000.00 common and $6,000,000.00 preferred.

On January 30, 1919, the corporation wrote Branch & Company that the directors of the company were fully authorized to issue and sell stock upon such terms as they thought best and were of the opinion that the stock should be offered to the holders of the common stock, and did not consider that the preferred stockholders had any rights of subscription thereto.

On or about January 25, 1919, a circular letter was issued to the common stockholders of the company in which it was stated that the *board of directors* had *authorized* the *issue and sale* of 20,000 shares of the common stock of the company to the then holders of common stock, in proportion to their respective holdings, at the par value of $100.00 per share.

[8] In the sections of the statute referred to or

quoted, *supra*, we find no reference to the right of any one class to subscribe to increased capital stock of a corporation to the exclusion of any other class of stockholders. Besides, under the provisions of these statutes neither the stockholders nor directors, nor both, can increase the capital stock, change the par value of the shares thereof, create two or more classes of stock, with preferences and voting powers, or restrictions or qualifications thereof, unless such authority be granted by the Corporation Commission in an amendment to the charter, or unless such preferences, restrictions or qualifications be stated and expressed in the charter, certificate of incorporation, or an amendment thereto.

In our view it is immaterial whether, as contended by the appellees, the *stockholders* voted to sell the new stock to holders of common stock only, since paragraph 9, section 1105-a, *supra*, provides in terms that the board of directors shall proceed to "dispose of the capital stock, as so increased, upon such terms and conditions and for such considerations as they may deem for the best interest of the said corporation."

Fairly and reasonably construed, the language just quoted is not sufficiently comprehensive, and was not intended by the legislature, to vest the board of directors with authority to deprive the preferred stockholders of their preemptive right to subscribe to the new issue of stock.

At most it simply vested them with the power to fix the amount of the issue to be offered and the terms, conditions and considerations upon and for which the new stock was to be sold, for the best interest of the company.

Paragraph 7, section 1105-a, contains no provision, as claimed by the appellee, authorizing the stockholders to direct the directors to sell the increased stock to the

common stockholders only, thus transferring from one class of stockholders to another a large share of the capital, surplus and assets of the corporation, in violation of their vested rights.

In section 3999, Fletcher Cyc. Corp., it is said: "A majority of stockholders cannot divide the assets among themselves to the exclusion of a minority. This is so apparent that an extensive citation of authority is useless."

The case of *Ohio Ins. Co.* v. *Nunnemacher*, 15 Ind. 294, relied on by the appellees, can be easily distinguished from the case at bar. In that case the question was, had existing stockholders the legal right, under the charter, on an increase of the capital stock of the company, to take such increased stock to the exclusion of all other persons. The court held that this question must be determined by the charter of the corporation. The charter provided that the directors of the company should make all by-laws for the management and disposition of the stock of the company; and that the directors "shall have power to increase the stock of the company to $200,000.00 on such terms and conditions, and in such manner, as to them shall seem best."

The power to *increase the stock on such terms and conditions* and *in such manner* as to them seemed best, and the power to *make by-laws for the disposition of the stock,* covered the whole subject, including the power to name the parties who would be permitted to purchase, and the court so held.

In the instant case no such plenary powers were vested in the board of directors.

From the statutes, it is manifest that the stockholders could secure an amendment to the charter of the corporation and create a new class of stock, and ex-

pressly provide in that amendment that the board of directors should determine who might buy and who might not buy such stock. It is equally true that the minority would be bound by such amendment. But, in the instant case, the amendment to the charter contains no such provision.

Upon the right of the preferred stockholder to subscribe to his *pro rata* share of a new issue of stock, the authorities are divided. Contending for the view contrary to the one herein expressed, the appellee relies upon *Niles* v. *Ludlow Valve Mfg. Co.*, 202 Fed. 141, 142, 120 C. C. A. 319; and *Stone* v. *U. S. Envelope Co.*, 119 Me. 394, 111 Atl. 536, 13 A. L. R. 422.

In the *Niles-Ludlow Case* the preferred stockholder was preferred over the common stockholder as to capital as well as to a dividend of eight per cent. In the *Stone-Envelope Co. Case*, the preferred shares had preference over the common stock for a dividend of seven per cent and also in the distribution of the assets of the corporation. These facts differentiate these cases from the instant case, in which the preferred stock, as appears *supra*, had the same rights and privileges as the common stock, except its dividend was preferred and limited to six per cent, and it had *no preference as to capital*. It is admitted by appellants that if their preferred stock in the defendant corporation had a preference as to principal, the sale of the common stock to common stockholders only would work less injury to them.

It is true that the preferred stockholders were entitled to no *dividend* in excess of six per cent, and that the residue of the profits might, if deemed for the best interest of the corporation, be paid to the common stockholders in cash dividends. But the board of directors had no authority to declare a stock dividend, in whole

or in part, in favor of, or sell the new stock exclusively to, the holders of common stock. The reason is obvious. A cash dividend is essentially different from a stock dividend. The distribution of the former in no way prejudices the rights of the preferred stockholders, while the distribution of the latter to common stockholders seriously affects his interest in the corporation. They had no authority *under the charter* to issue new shares of stock to them only, on an increase of the capital stock, and thereby diminish the proportionate interest of the preferred stockholders in the assets of the corporation.

Our conclusion is that the complainants were entitled to subscribe to the new stock at $100.00 per share to the extent of twenty per cent and not fifty per cent of their holdings of preferred stock, as claimed in their bill, since the new issue of $2,000,000.00 was only twenty per cent of the original $10,000,000.00 of stock.

(b) Can the complainants obtain, in this suit, the relief prayed for?

[9, 10] It is not denied that equity can grant relief, in a proper case, where it is shown that it is the *purpose* of a corporation *to issue* unissued stock to persons who are not entitled to the same. In such cases equity will intervene and protect the rights of the parties complaining.

In section 3650, 4 Thompson on Corporations (2d ed.), the law is stated thus:

"If the capital stock is increased by the proper authorities, the right to take the additional shares vests in the shareholders *pro rata*   *   *   *.

"Accordingly, when a corporation is issuing new stock generally and refuses to issue to a shareholder his due proportion, he can compel it to do so by a suit in equity, *at least so long as there remains stock undisposed of.*"

Citing Taylor on Corporations, 569; Angell and Ames on Corporations, section 554; 2 Clark & Marshall Corporations, section 408; 1 Cook Corporations, section 286; *Humboldt Driving Park Association* v. *Stevens*, 34 Neb. 528, 52 N. W. 568, 33 Am. St. Rep. 654; *Cunningham's Appeal*, 108 Pa. St. 546; *State* v. *Smith*, 48 Vt. 266.

In 14 Corpus Juris, page 400, section 535, we find this: "If a stockholder's right to take his proportionate share of unissued or increased stock is violated by the corporation, he may enforce the same in a proper cause by a bill in equity, or an equitable action under the codes to compel it to issue to him the shares to which he is entitled, or in the alternative to recover damages, if the shares have been disposed of to others.". Citing *Bates* v. *U. S. Shoe Mach. Co.* (D. C.), 206 Fed. 716.

Had complainants, in the instant case, filed a proper bill before the 20,000 shares of additional stock were actually issued, showing that they were entitled to their *pro rata* share thereof, the court could have properly enjoined the issuance of all the stock to the holders of common stock, and compelled the issuance to the complainants of their *pro rata* share. Having delayed the institution of court proceedings until after the stock was issued to the holders of common stock, and by them possibly transferred to others, the court is powerless, under the record in this case, to require the directors and stockholders to authorize an *additional issue* of stock, since the question of the *amount* of capital stock to be issued by the corporation is a question to be determined by its stockholders and directors and not by the court. By their delay having placed themselves in such a position, complainants' remedy is at law, and they cannot be heard to say it is inadequate. The

remedy at law would be a judgment for the market value of the stock—that is, a price at which complainants can buy it on the market, less a credit of $100.00 per share, which complainants would have paid the corporation, if allowed to subscribe for the stock. Whether the remedy at law is full, adequate and complete, we do not decide, but it is all that complainants are now entitled to in the instant case.

Without passing upon any other ground of the defendant's demurrer, we will sustain the demurrer upon the sixth ground, to-wit, that "this court cannot, by any decree it may enter, furnish the relief asked for in the bill."

We are of the opinion, however, that the decree complained of, dismissing complainants' bill, is erroneous, and it will be reversed and set aside. The case will be remanded to the circuit court, with leave to the complainants to amend their pleadings, under Code section 6084, as may be necessary to conform them to the proper practice, thereby obviating the objection that their suit was not brought on the right side of the court, and have the case determined upon such amended pleadings; or to dismiss their bill and institute a new suit or suits at law, as they may be advised.

*Reversed and remanded for further proceedings.*

PRENTIS and BURKS, JJ., dissenting:

We concur in the conclusion of the majority, that the trial court committed no error in sustaining the demurrer to the bill; but we dissent from the conclusion that the preferred stockholders had any right to share

in the distribution of the common stock at less than its value, or that any of their legal or equitable rights have been violated.

As under their contract the interest of the preferred stockholders, in the earnings of the company, is expressly limited to six per cent dividends annually, it inevitably follows that all of the residue of the earnings belonged solely to the common stockholders. To permit them to participate in the new issue of the common stock at a price less than its value is in effect to accord to them a participation in such profits, from which their contract excludes them.

None of the cases cited in support of the contrary view was controlled by such statutory provisions as those which here control the question, and the true rule, in our opinion, is that indicated in *Ohio Insurance Co. v. Nunnemacher*, 15 Ind. 294; *Niles* v. *Ludlow Mfg. Co.*, 202 Fed. 141, 120 C. C. A. 319; and *Stone* v. *U. S. Envelope Co.*, 119 Me. 394, 111 Atl. 536, 13 A. L. R. 422, which are also cited in the majority opinion.