# Richmond

W. D. POWELL V. CRADDOCK-TERRY COMPANY, ET ALS.

February 26, 1940.

Record No. 2152.

Present, All the Justices.

The opinion states the case.

*Meade & Talbott,* for the plaintiff in error.

*Malcolm K. Harris* and *Kemp, Hobbs, Daniel & Davidson,* for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

W. D. Powell filed in the court below a petition for a declaratory judgment against Craddock-Terry Company, a Virginia corporation, determining his rights as a stockholder in that company under the following facts and circumstances:

The company has outstanding a total of 12,500 shares of first preferred stock, 12,500 shares of second preferred stock, 9,956 shares of class "C" preferred stock, and 32,704

shares of common stock, issued pursuant to its original charter and various amendments thereof. At the time the petition was filed the cumulative dividends on the three classes of preferred stock were nearly eight years in arrears.

The petitioner is the holder of 122 shares of first preferred stock and 66 shares of second preferred stock of the company, on which there is due a considerable sum for accumulated and unpaid dividends.

On August 1, 1938, the president of the company wrote the stockholders a circular letter advising them that, subject to the approval of 80% of the holders of each class of stock, the board of directors proposed to sell all of the properties and assets of the company to a new corporation to be formed. Under the proposed plan the new corporation was to issue four classes of stock corresponding to the four outstanding classes of stock of the Craddock-Terry Company. In return for his shares in the old company, each stockholder was to receive a like number of shares of the corresponding class of stock in the new company. In addition to this each preferred stockholder in the old company was to receive a proportionate number of shares of common stock in the new company, but no cash. In some respects the rights and privileges of the preferred stock in the new company were less desirable than those of the preferred stock in the old company.

The letter stated that no provision would be made for the payment of the accumulated unpaid dividends on the preferred stock in the old company.

Attached to the letter was a copy of the contract for the proposed sale of the assets, a copy of the proposed charter of the new company, and extracts from the Virginia statutes showing the rights of stockholders who might be unwilling to agree to the proposed sale.

The letter requested that the stockholders signify before a stated time their assent or dissent to the proposition.

The petitioner alleged that according to his interpretation of the terms of the respective charter amendments under which the two classes of preferred stock held by him had

been issued, such stock, in the event of the liquidation of the company, was to be preferred out of its assets, as to both the par value thereof and all accumulated dividends thereon, over the other classes of stock, and that the net assets of the company, as shown by the president's letter of August 1, 1938, were sufficient to settle with the holders of all of such first and second preferred stock on this basis.

The petitioner further alleged that he was unable to act intelligently upon the proposal submitted to him by the company until he was fully advised of his rights as a preferred stockholder in the event of a liquidation of the company's affairs. According he prayed for a declaratory judgment determining his rights and the extent of his participation in the capital assets of the Craddock-Terry Company in case of such liquidation.

The Craddock-Terry Company moved to reject or dismiss the petition on several grounds, among which were: (1) That the petition presented no "actual controversy" between the petitioner and the company as is required by the declaratory judgment act (Acts 1922, ch. 517, p. 902; Virginia Code 1936, sections 6140a, ff.) ; that the matters sought to be litigated did not concern the company itself, but on the contrary concerned the holders of the various classes of stock, who were necessary parties to the proceeding; and (2) That the petition failed to show that a liquidation of the assets of the company was contemplated or probable.

The lower court entered an order providing that unless, on or before a certain date, the petitioner should make defendants to the proceedings one or more holders of class "C" preferred stock and one or more holders of the common stock of the defendant corporation, the petition would stand dismissed.

Within the prescribed time such stockholders were made parties defendant and an amended petition for a declaratory judgment was filed against all of the defendants.

In its answer the Craddock-Terry Company again took the position that the amended petition should be dismissed for

the reason that it presented no actual controversy between the parties, and that it failed to show a contemplated or probable liquidation of the company's affairs.

On the merits it admitted all of the essential facts alleged in the petition, but denied the conclusion of law that the petitioner was entitled, by virtue of the charter amendments under which the preferred stock held by him had been issued, to be paid accumulated dividends thereon in the event of the liquidation of the company.

The testimony of several witnesses was heard *ore tenus* by the court. But as this is not properly made a part of the record and, indeed, is not material to the principal issue here involved, it will not be further referred to.

After deliberate consideration the trial court held that the petitioner was not entitled, in the event of the liquidation of the company, to preference of payment of the accumulated dividends on his preferred stock. To review the judgment carrying out that conclusion the present writ has been granted.

On its part the company assigns cross-error to the action of the court in not dismissing the petition on the grounds stated above. It is not necessary that we pass upon the questions raised by the assignment of cross-error, for if it be conceded that the necessary parties are before the court and that the petition shows that there is an actual controversy between them, it is our opinion that the trial court reached the right conclusion on the merits.

In *Lyman* v. *Southern Ry. Co.*, 149 Va. 274, 281, 141 S. E. 240, 242, we adopted this language of the distinguished trial judge, Hon. Beverley T. Crump, which is quite applicable to the instant case:

██ "Ordinarily the shares of the general stock of a corporation, which is the division of its capital into units, all stand upon the same footing. Equal participation in the organization and control of the corporation and also in any distribution of the funds of the corporation, whether it be of earnings or of corporate assets, are rights ordinarily attaching to each share of stock. Where there is a deviation

from this rule or fundamental feature by giving greater or prior rights and preferences to one class of stock over another class, the character and degree of the prior right or preference is to be ascertained from the language in which it is stated in the charter or organization documents which contain the evidence of the contract between the holders of the different classes of stock."

See also, 13 Am. Jur., section 689, p. 694; 18 C. J. S., Corporations, section 227, p. 655.

The first preferred stock was issued pursuant to an amendment to the charter of the corporation, which became effective on January 15, 1913. The second preferred stock was issued under an amendment which became effective on November 24, 1917. At the time these amendments were authorized the Virginia statute then in effect provided that "Every corporation shall have power to create two or more kinds of stock, of such classes, with such designations, preferences, and voting powers, or restrictions or qualifications thereof, as shall be stated and expressed in the charter, certificate of incorporation, or articles of association, or in any amendment thereof; * * * ." (Acts 1902-03-04, ch. 270 (sub ch. V, section 13), pp. 469-470; Pollard's Code 1904, section 1105e(13).)[1]

This provision was adopted by Virginia from the New Jersey law along with the construction placed upon it by the courts of that State. *Branch & Co.* v. *Riverside, etc., Cotton Mills,* 139 Va. 291, 301, 123 S. E. 542.

In discussing the corresponding New Jersey statute the highest court of that State said, in *Lloyd* v. *Pennsylvania Electric, etc., Co.,* 75 N. J. Eq. 263, 266, 72 A. 16, 18, 138 Am. St. Rep. 557, 21 L. R. A. (N. S.) 228, 20 Ann. Cas. 119: "The power to create preferred stock is granted by section 18 [N. J. S. A. 14:8-1 et seq.], and it is granted upon the terms set forth in that section. To enact that the stock should have such preference as is stated or expressed in the certificate was equivalent to enacting that it should have no other preferences, upon the general principle of inter-

---

[1] See Code 1919, section 3792.

pretation that the expression of one thing is the exclusion of another."

■ And, as was further said in that case (75 N. J. Eq., at page 270, 72 A. at page 19, 138 Am. St. Rep., at page 562, 21 L. R. A. (N. S.) 228, 20 Ann. Cas. 119): "Since the corporators have this power to limit the right of preferred stockholders, the question in any particular case is whether they have in fact done so. When they have undertaken, as in this case, to set forth the preference to which preferred stock is entitled, we think that they must set forth that preference fully, and that, so far as they fail to express a preference the preferred stock can have no other rights than the common stock."

■ Therefore, in the instant case, whether the petitioner, as the holder of cumulative preferred stock, is entitled in the liquidation of the corporation to be paid arrearages of dividends, depends entirely upon the construction of his contract embodied in the charter amendments under which the two classes of stock held by him were issued. *Drewry-Hughes Co.* v. *Throckmorton*, 120 Va. 859, 862, 92 S. E. 818; *Johnson, Adm'r* v. *Johnson & Briggs, Inc.*, 138 Va. 487, 490, 122 S. E. 100; *Tennant* v. *Epstein*, 356 Ill. 26, 189 N. E. 864, 98 A. L. R. 1515, 1516; *Penington* v. *Commonwealth Hotel Const. Corp.*, 17 Del. Ch. 394, 155 A. 514, 75 A. L. R. 1136; *Wilson* v. *Laconia Car Co.*, 275 Mass. 435, 176 N. E. 182; 13 Am. Jur., section 695, p. 705.

The pertinent provisions of the charter amendment of January 15, 1913, under which the first preferred stock was issued, are set out in the margin.[2]

_____

[2] "(a)   Six per cent cumulative dividend preferred stock, dividends payable three per cent semi-annually; provided, however, that whenever the dividends paid on Common stock in any one year, exceed $12.00 per share, an extra dividend of $1.00 per share shall be paid on the Preferred stock, and if the Dividends paid on the common stock in any one year shall exceed $15.00 per share, then the extra dividend on the preferred stock shall be increased to $2.00 per share.

"(b)   All Preferred stock issued under authority of this resolution shall be preferred as to earnings to the extent of six per cent per annum, and said dividends shall be cumulative, and said Preferred stock shall also be preferred as to assets in liquidation.

The present controversy turns on the proper interpretation of this paragraph: "(b) All Preferred stock issued under authority of this resolution shall be preferred as to earnings to the extent of six per cent per annum, and said dividends shall be cumulative, and said Preferred stock shall also be preferred as to assets in liquidation." The question is, Does this language entitle a holder of cumulative preferred stock to be paid arrearages of dividends out of the assets of the corporation in liquidation before anything is paid to the holders of the subordinate classes of stock?

Certainly the preference claimed is not "stated and expressed" in clear and unambiguous language. Indeed, the brief of the plaintiff in error says: "It must be admitted that this language is ambiguous and worthy of judicial construction."

When the provisions of the charter amendment are read as a whole, we observe that the holders of the preferred stock are given definite and substantial preferences. They receive dividends at the rate of six per cent. per annum, payable semi-annually. Such dividends are preferred "as to earnings" and are cumulative. Should the dividends paid to the common stockholders exceed a specified amount, then the preferred stockholders are entitled to an extra dividend

"(c) The Preferred stock shall not carry with it a voting privilege, except when the six per cent annual cumulative dividend shall be six months in arrears, then and in that event, the Preferred stock shall be entitled to one vote for each share upon the same basis as the Common stock, but this voting privilege is only extended to the preferred stock during the period of suspension of regular annual dividends on the Preferred stock as herein provided.

"(d) The Company, through its Board of Directors, shall have the option of retiring by lot or otherwise, as shall be determined by it, all or any portion of said preferred stock at $110.00 per share and accumulated dividends after January 1, 1923; provided, however, the Company may have the right to retire any or all of the said Preferred stock at any dividend period after January 1, 1916, and prior to January 1, 1923, at $115.00 per share and accumulated dividends.

"(e) No encumbrance of any character shall be placed by the Board of Directors or stockholders, in shape of mortgage, lien or otherwise upon the property of the Company, unless the same shall provide first for the retirement of the Preferred stock with accumulated dividends upon the terms and conditions as set forth above."

of a specified amount. Should default be made in the payment of cumulative dividends for a period of six months, then the preferred stock is given the same voting privilege as the common stock during the suspension of such dividends. All of these preferences are stated in clear and unmistakable language.

It is significant, we think, that in case of retirement of the preferred stock the company is required to pay both a premium on the par value of the stock and "accumulated dividends" thereon. Again, no mortgage or encumbrance of any character may be placed by the board of directors or stockholders upon the property of the corporation unless provision be first made for the retirement of the preferred stock "with accumulated dividends."

But in case of liquidation the provision is that the preferred "stock" shall be preferred as to assets. Here there is no mention of "accumulated dividends." Certainly the use of the words "accumulated dividends" in one instance and the failure to use them in the other were not intended to convey the same meaning. On the contrary we think it shows a deliberate intent on the part of the draftsman, in the event of the liquidation of the company, to confine the preference to the principal of the stockholder's investment, that is, the value of his preferred stock without such accrued dividends.

It is true that in *Drewry-Hughes Co.* v. *Throckmorton, supra,* and in *Johnson, Adm'r* v. *Johnson & Briggs, Inc., supra,* we held that in the distribution of assets of those two corporations the preferred stockholders were entitled to be paid the value of their stock, together with all accumulated and unpaid dividends thereon, before anything was paid to the common stockholders. But the decision in each of those cases was placed squarely on the ground that the language in the charter of the corporation expressly provided for the payment of such arrearages of dividends due on the preferred stock. The pertinent charter provisions of those two corporations are set forth in full in *Johnson, Adm'r* v. *Johnson & Briggs, Inc., supra* (138 Va., at page 491, 122 S. E.

100). The difference between them and the provisions in the instant case are apparent. ⟨FL⟩

See also, *Wilson* v. *Laconia Car Co., supra; Penington* v. *Commonwealth Hotel Const. Corp., supra; Geiger* v. *American Seeding Machine Co.*, 124 Ohio St. 222, 177 N. E. 594, 79 A. L. R. 614, for provisions similar to those in the *Drewry-Hughes Co.* and *Johnson & Briggs, Inc.*, charters.

We have been pointed to no decision nor have we been able to find any in which accumulated and unpaid dividends were allowed to a preferred stockholder in the distribution of a corporation's assets unless such preference was clearly and expressly set forth in the charter.

What we have said applies with equal force to the claim for a preference of accumulated and unpaid dividends on the second preferred stock. Except for the preference given the first preferred over the second preferred and for other minor details not here material, the preference provisions of the two classes of stock are substantially the same.

The view we have taken of the matter makes it unnecessary that we deal with other questions raised in the briefs.

The judgment is

*Affirmed.*