# Richmond.

## ARTHUR LYMAN, WHO SUES, ETC., AND OTHERS v. SOUTHERN RAILWAY COMPANY.

January 19, 1928.

Absent, Burks, J.

1. STOCK AND STOCKHOLDERS—*Preferred Stockholders—Participating in Excess Profits—Contract Determines Question.*—In considering the question of whether preferred stock is entitled to participate in the distribution of excess profits after dividends on the preferred and common are paid, it is fundamental that the court should look first to the documents constituting the contract under which the preferred and common stock, respectively, were issued.

2. STOCK AND STOCKHOLDERS—*Rights of Common and Preferred Stockholders—Equal Participation in Organization and Distribution of Corporate Funds.*—Ordinarily the shares of the general stock of a corporation, which is the division of its capital into units, all stand upon the same footing. Equal participation in the organization and control of the corporation and also in any distribution of the funds of the corporation, whether it be of earnings or of corporate assets, are rights ordinarily attaching to each share of stock.

3. STOCK AND STOCKHOLDERS—*Rights of Common and Preferred Stockholders—Equal Participation in Organization and Distribution of Corporate Funds—Deviation from General Rule.*—Where there is a deviation from the rule that classes of stockholders are equally entitled to participate in organization, control and distribution of the funds of the corporation by giving greater or prior rights and preferences to one class of stock over another class, the character and degree of the prior right or preference is to be ascertained from the language in which it is stated in the charter or organization documents which contain the evidence of the contract between the holders of the different classes of stock.

4. STARE DECISIS—*Opinions of Court—Considered with Reference to the Facts of the Particular Case.*—The language and expressions of appellate courts in dealing with a case should be considered with reference to the facts of that particular case being decided and should not be given too wide and general application.

5. STOCK AND STOCKHOLDERS—*Preferred Stock—Right to Participate in Surplus—Determination of the Question—Construction of the Contract.*—It was contended for plaintiff that since preferred stock has attached to it all rights inherent in general stock except so far as it is limited by contract, participation in surplus net earnings for any one year accompanies preferred stock as a matter of original right unless the contract expressly provides otherwise. It was contended for defendant that the established rule was just the contrary—that is, that where a stated preferred dividend is given to preferred stockholders and nothing is said as to payment of further dividends, then the failure to provide for further dividends disentitles preferred stockholders to any additional dividends out of the surplus earnings. But neither of these rules can be asserted as a maxim of the law applicable to all cases, and the question must be determined in each case in the light of all the language of the contract, giving effect to every provision in it, and it may be, construing it in the light of the circumstances in which the parties stood.

6. STOCK AND STOCKHOLDERS—*Preferred Stock—Right to Participate in Surplus—Construction of Contract—Giving Effect to Words and Provisions.*— Where the question at issue is the right of preferred stockholders to participate in the distribution of the surplus, the charter of the corporation or contract with the stockholders under which their respective rights are to be determined must be construed in accordance with the ordinary principles applicable to the construction of contracts between parties, and every word must be considered and every provision given effect.

7. STOCK AND STOCKHOLDERS—*Preferred Stock—Right to Participate in Surplus—Case at Bar.*—The question at issue in the instant case was the right of preferred stockholders to participate equally with the holders of the common stock in the net profits of the corporation in any one fiscal year in excess of five per cent dividends on both classes of stock. The charter or contract provided in express terms that when after the preferred stock dividends were satisfied, there remained a surplus, the board should have power to declare and pay dividends on any other stock than the preferred, out of the surplus. The phrase "any other stock" was used at a time when there was no other stock beyond the preferred, except the common.

*Held:* That the court could not limit the power thus conferred upon the board, by deciding that the board might not declare a dividend out of the surplus upon any other stock, without allowing the preferred to participate therein.

8. STOCK AND STOCKHOLDERS—*Preferred Stock—Participating in Surplus—Construction of Contract or Charter.*—Contract or charter provisions in regard to the respective rights of common and preferred stockholders to participate in the distribution of surplus funds of the

corporation should not be too technically viewed, but their language should be interpreted as the average man in the investing public would interpret it.

9.  STOCK AND STOCKHOLDERS—*Preferred Stock—Participation in Surplus— Case at Bar.*—In the instant case the charter of a corporation, after providing for the issuance of preferred stock which should be entitled to certain preferences enumerated and to none other, declared that notwithstanding the preference, if after providing for the payment of dividends for any fiscal year on the preferred stock there should remain a surplus of net profits of such year "the board of directors may declare and pay dividends upon any other stock of the company for such year, out of such surplus net profits."

   *Held:*  That after the prior preferred dividend was paid for the fiscal year the board was permitted and given discretion to pay a dividend, without limitation upon the amount of the dividend, upon the common stock out of the surplus net profits for the year.

10.  STOCK AND STOCKHOLDERS—*Preferred Stockholders—Participation of Preferred Stockholders of the Southern Railway Company with Holders of Common Stock in the Surplus Net Profits in any one Fiscal Year in Excess of Five Per Cent—Case at Bar.*—The question at issue in the instant case was whether or not the holders of the preferred five per cent stock of the Southern Railway Company were entitled to participate equally with the holders of the common stock in the surplus net profits in any one fiscal year in excess of five per cent dividends on both classes of stock. The charter of the Southern Railway Company provided that "the preferred stock is entitled to the following preferences, and to none other." Then followed a provision for a five per cent non-cumulative preferred dividend from the net profits of the company as fixed and determined by the board of directors, and only when the board should declare dividends therefrom; "but, notwithstanding the preference hereby declared, if, after providing for the payment of dividends for any fiscal year on the preferred stock outstanding in such year, there shall remain a surplus of net profits of such year, the board of directors may declare and pay dividends upon any other stock of the company for such year, out of such surplus net profits."

   *Held:*  That the preferred stockholders were limited to five per cent dividends in any one fiscal year, and could not participate further in the surplus net profits for such year because by their contract they had expressly accorded to all of the other stockholders the paramount and hence the exclusive right to have dividends therefrom, subject only to the legal and proper discretion of the board of directors.

Appeal from a decree of the Law and Equity Court of the city of Richmond.    Decree for defendant. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Joseph S. Clark, Percy H. Clark, Paul C. Wagner,* and *Christian & Lamb,* for the appellants.

*Thomas B. Gay, S. R. Prince* and *L. E. Jeffries,* for the appellee.

PRENTIS, P., delivered the opinion of the court.

This is an appeal from a decree denying the relief prayed for in the bill and dismissing it.    The question raised is whether or not the holders of the preferred five per cent stock of the Southern Railway Company are entitled to participate equally with the holders of the common stock in the surplus net profits in any one fiscal year in excess of five per cent dividends on both classes of stock.

The opinion of the learned trial judge, Hon. Beverley T. Crump, so carefully states the facts, the issues raised and the proper conclusions to be drawn therefrom, that little if anything more can be profitably said.    We reproduce it as stating such proper conclusion and sufficient reasons therefor:

"The properties of the system of railroads formerly operating under the name of the Richmond and Danville Railroad Company were sold in the year 1894 in a foreclosure suit pending in the Circuit Court of the United States for the Eastern District of Virginia.    By an act of the General Assembly passed in February, 1894 [Laws 1893-94, chapter 302], the purchasers at

this sale had been authorized to organize themselves and their associates into a new corporation under the name of Southern Railway Company. What took place was practically a reorganization into the Southern Railway Company of the former corporations operating the property. The act directed that the purchasers of the property should file with the Secretary of the Commonwealth a certificate and plan of organization setting out the details of the stock issuance and other matters relative to the organization and operation of the new corporation. These documents having been executed and filed, the corporation issued $60,000,000 of preferred stock and $120,000,000 of common stock, all of the par value of $100 per share.

"In the year of 1924 the net earnings of the Southern Railway Company amounted to upwards of $17,000,000. During the year 1925 the directors, after setting aside out of the earnings a five per cent dividend on the preferred stock, proceeded to declare dividends upon the common stock in quarterly payments, the first three amounting to one and one-quarter per cent and the last quarterly dividend amounting to one and three-quarters per cent, making a total dividend for the year of five and one-half per cent on the common stock. Thereupon this suit was instituted by the complainants, as holders of preferred stock, on behalf of themselves and other like stockholders. The prayer of the bill is that the court enjoin the defendant, Southern Railway Company, from declaring out of its surplus earnings in any one year a greater dividend upon the common stock than five per cent, unless the preferred stockholders are given participation in any surplus of dividends over five per cent declared upon the common stock.

"The contention of the plaintiffs is that, as holders

of preferred stock, they should have a right to participate ratably in all excess dividends declared by the board of directors out of the profits of any one year, after the board has satisfied a five per cent preference which attaches to their stock and has paid the common stock a like dividend of five per cent; in other words, that the preferred stock is what is ordinarily called participating stock.    The defendant's claim, on the other hand, is that after the preferred stock has received its five per cent dividend in any one year from the net profits in that year, then the board of directors has no right to declare a further dividend on the preferred stock in addition to the five per cent dividend, but that the surplus net profit remaining after the payment of the five per cent preferred dividend is subject to such dividend payment in favor of the common stockholders as the board of directors may declare. Defendant therefore claims that the preferred stock is non-participating stock.

[1] "In considering a question of this character it is fundamental that the court should look first to the documents constituting the contract under which the preferred and common stock, respectively, were issued.

"In this case the enabling act or charter of February, 1894, contained the following with reference to the issuance of stock:

" 'Said new corporation may issue its capital stock of one or more classes or kinds, and in one or more series or grades, with such preferences, conditions and voting power as shall be provided in said plan of organization; and, from time to time, it may increase or decrease the amount of any class or kind or grade of such stock as shall be provided in said plan of reorganization, or with the approval of a majority in amount of the stockholders, given at a meeting of stockholders called

for that purpose, unless and except as otherwise expressly provided in certificates representing stock previously issued. The shares of each class of stock shall be of such par amount, and shall entitle the holders to such vote, respectively, as shall be determined in the said plan of reorganization or by the stockholders in like manner.' [Section 5.]

"In the plan of reorganization executed under the charter, provision is made for the issuance of preferred and common stock as follows:

" 'The said purchasers and the Southern Railway Company have fixed the capital stock of the corporation at $180,000,000 divided into one million eight hundred thousand shares of the par value of $100 each, of which six hundred thousand shares are preferred stock and the remainder are common stock, reserving the right to increase such capital stock up to, but not exceeding, the limit authorized by the said act of Assembly of the Commonwealth of Virginia approved February 20, 1894, and to increase or decrease the amount of any class or kind or grade of its capital stock, and also reserving any and all right to redeem and purchase at par any and all preferred stock, or any kind, class or grade thereof.

" '*The preferred stock is entitled to the following preferences, and to none other, viz:*

" 'In each and every fiscal year after the first day of July, 1895, to receive non-cumulative dividends at and up to the rate of five per cent per annum in preference and priority to the payment of any dividend on the common stock in such fiscal year, but only from the net profits of the company as such shall be fixed and determined by the board of directors, and only when and as such board shall declare dividends therefrom; but, notwithstanding the preference hereby declared, if,

after providing for the payment of dividends for any fiscal year on the preferred stock outstanding in such year, there shall remain a surplus of net profits of such year, the board of directors may declare and pay dividends upon any other stock of the company for such year, out of such surplus net profits.'

[2, 3] "Ordinarily the shares of the general stock of a corporation, which is the division of its capital into units, all stand upon the same footing. Equal participation in the organization and control of the corporation and also in any distribution of the funds of the corporation, whether it be of earnings or of corporate assets, are rights ordinarily attaching to each share of stock. Where there is a deviation from this rule or fundamental feature by giving greater or prior rights and preferences to one class of stock over another class, the character and degree of the prior right or preference is to be ascertained from the language in which it is stated in the charter or organization documents which contain the evidence of the contract between the holders of the different classes of stock.

"The certificates of the preferred stock and also of the common stock issued in this instance contain on their face the following sentence:

" 'The common stock is subject to the prior rights of the holders of preferred stock at any time outstanding according to the preferences thereof.'

"Thereupon, in each certificate, follows so much of the language as above transcribed as commences with 'the preferred stock is entitled to the following preferences, and to none other, viz.'

"Immediately following, the certificates contain these two additional sentences, taken from the plan of organization:

" 'Such preferred stock is authorized to the amount of sixty million dollars, and, without the consent of the holders of a majority of such preferred stock then outstanding, the company can neither increase such authorized amount thereof nor put upon its property any mortgage to secure bonds for more than the aggregate principal sum of one hundred and twenty million dollars, in addition to prior liens thereon, assumed, extended or renewed, or any substitutions therefor, against which a like amount of bonds shall be reserved out of such amount of $120,000,000. Southern Railway Company may at any time exercise any charter right to redeem the preferred stock in cash at par.'

"The certificates therefore carried quite a full statement of the contract.

"In order to see what are the distinguishing characteristics of the preferred stock which differentiate that stock from the common stock, we must have recourse to the terms of the contract appearing in the provisions of the charter and the plan of organization above transcribed. These distinguishing features are the following:

"First: The preferred stock is fixed at six hundred thousand shares, that is, $60,000,000, and this original issue shall be kept at that amount, without increasing it otherwise than with the consent of a majority of the holders of that stock.

"Second: The corporation is given the right to redeem all preferred stock at par at any time.

"Third: The preferred stock is to receive out of the earnings of each year a non-cumulative dividend whenever the board of directors declares a dividend from the net profits of any year; this dividend may be less but shall not be more than five per cent, to be paid to the preferred stockholders prior to the right of the common stockholders to receive any dividend from the net earnings of such year.

"Fourth: Despite, however, the preference in the matter of dividend, which may amount to five per cent, the board of directors, after making provision for the payment of the dividend on the preferred stock for any fiscal year, may, if there remain a surplus of net profits for such year, declare and pay dividends upon any other stock of the company out of such surplus net profits. The only other stock issued by the corporation was common stock.

"Fifth: When preferred stock to the amount of sixty million dollars has been issued, its holders are given the right to object to any increase of such stock except with the consent of the majority of the holders of the preferred stock; and they are given the further right to object to any increase of lien upon the property of the company by any mortgage to secure bonds beyond the amount mentioned in the plan of organization. This privilege confers upon the holders of the original sixty million dollars of preferred stock a very important right not ordinarily attaching to stock. The issuance of additional common stock would not affect their preferential right to the five per cent dividend, but the issuance of additional preferred stock would necessarily have an effect upon the capacity of the corporation to pay up to five per cent upon the preferred stock. For when the directors wished to declare a dividend and the net earnings in any one year were sufficient to yield a five per cent dividend on $60,000,000 of preferred stock, yet if $120,000,000 of preferred stock were outstanding, each holder of preferred stock could receive only two and one-half per cent instead of the five per cent each would have received if the stock remained limited to $60,000,000. In this respect, therefore, the preferred privilege was carefully guarded by this additional stipulation, as also by the right to pre-

vent the corporation from entering upon additional bond obligations, the interest upon which might lessen the amount of net earnings available for the preferred dividend.

"These being the features which distinguish the preferred stock from the common stock, the question to be decided in this case is whether the language of the contract, in which the preferential rights and other features distinguishing the preferred stock from the common stock are framed, is such as to debar the preferred stock from receiving any further dividend in a year in which large earnings have been made, sufficient to pay a dividend of five per cent on the preferred stock, five per cent on the common stock and still leave a surplus of net earnings subject to distribution. Have the directors, out of the surplus net earnings, the power to declare a greater dividend than five per cent on the common, or are they limited, after declaring a dividend of five per cent on the common, to a declaration of a general dividend in which all the stock of the company, both common and preferred, shall equally participate?

"The question so presented has been argued by learned counsel on both sides very exhaustively. The arguments have taken a very wide range. A large number of judicial decisions have been referred to and many of them have been analyzed in great detail. I shall not undertake to do more than refer to some of the cases that seem to be the more important and leading decisions, although I think I have read every authority referred to by learned counsel on both sides.

"In the case of *Branch & Co.* v. *Riverside Mills,* 139 Va. 291, 123 S. E. 542, the court had before it an important and interesting question, but not one which directly bears upon the instant case. The corporation there involved was an ordinary business company, and

in June, 1919, had its charter amended so as to authorize the issuance of additional common and preferred stock. Under this authority the directors issued additional common stock, but no additional preferred stock. The outstanding preferred stock entitled the holder to an annual, cumulative dividend of six per cent, with an express provision that the stock was not entitled to receive out of the profits any greater or other dividends than the said six per cent. In issuing the additional 20,000 shares of common stock, the directors confined its sale to the common stockholders and at par, that is, for $100 a share, although in a distribution of the capital assets of the corporation the common stock would have a greater value. The court decided that the corporation by receiving this amendment had subjected itself to all the provisions of the then existing corporation law of Virginia, and that the board had no authority to exclude the prior preferred stockholders from an equal right to subscribe ratably to the new stock. The court was careful to point out that what it was adjudicating related to an increase of the capital of the corporation by an authorized issuance, for sale for cash, of new and additional stock. There was no distribution of earnings, except, perhaps, so much as might be represented by the difference between the selling price of the stock and the actual value when added to the capital. On page 303 the court says that the sale of the new stock to the common stockholders was not in legal effect the declaring of a dividend to them out of the profits of the corporation; that the transaction left the undivided profits untouched and added $2,000,000 to the credit of the corporation as capital. However this case may be analyzed, the real question decided by the court is confined to the right of the preferred stockholders to share in the issuance of

new stock actually sold for value; and while the trans-
action carried into capital account an increase in
liabilities, it also carried, by reason of the accretion
from the purchase money, a corresponding increase to
the assets of the corporation.    I find nothing in it
that deals with the question of the declaration of
cash dividends out of the net earnings of a corporation
for a particular year.

"In the *Branch Case* the court makes no reference
to two earlier Virginia cases, *Ragland* v. *Broadnax*, 29
Gratt. (70 Va.) 401, and *Gordon* v. *R. R. Co.*, 78 Va.
501.    In the *Ragland Case* it will be seen on page 412
that the court construed the contract, under review in
that case, to entitle the preferred stockholders to share
in the earnings of the company after they had received
their dividend and a like dividend had been declared
upon the common stock.    That being the contract
between the parties, nothing further remained except
to enforce it.

"In *Gordon* v. *R. F. & P. R. R. Co.*, 78 Va. 501, the
company issued preferred stock at different periods
under two legislative acts.    The holders of the issue of
preferred stock under the first act had a guaranteed
dividend of seven per cent; the holders of the second
issue of the preferred stock had a guaranteed dividend
of six per cent.    Under a resolution adopted by the
board of directors, both classes of stock were entitled
to share in any excess of dividends beyond that guaran-
teed them, which might at any time be paid on the
common stock of the company.    In other words, the
preferred stock was given a right to participate in any
dividend out of the general surplus of net earnings.
The two questions passed upon by the court were
whether the company was authorized by the terms of
the statutes to issue preferred stock of the character

of the stock in question, and also whether the contract gave the preferred stockholders the right, after their guaranteed dividend had been paid, to participate in a dividend out of, or a distribution of, accumulated surplus net earnings. Both of these inquiries were decided in the affirmative. Having found that the statutes authorized the issuance of this stock, and that it was stock and not in the nature of a debt, the court concluded that, as the statutes did not mention participation in surplus assets and the directors had in terms contracted for participation in surplus dividends, the preferred stockholders stood on an equal footing with all other stockholders upon a distribution of surplus assets. The surplus earnings were distributed in this case by issuing dividend obligations, and it was held that the preferred stock had a right to participate in these dividend obligations along with the common stock. So far as the question in the instant case is concerned, it must be said that the contract in the *Gordon Case* provided in terms that the preferred stock should share in any dividend declared out of surplus earnings, and that the real question there at issue was the right of the preferred stock to share in the distribution of an accumulated surplus, which is a very different question from the one before us in the instant case.

"In *Johnson* v. *Johnson & Briggs, Inc.*, 138 Va. 487, 122 S. E. 100, the sole question before the court was whether the preferred stock, which was made cumulative as to dividends, was entitled to payment of past dividends out of the assets of the corporation upon distribution in dissolution. The court held that under the terms of the contract in that case the past dividends, which had been unpaid on the preferred stock should be paid in dissolution out of the assets prior to any payment to the common stockholders, as well as the

par value of the preferred stock.   On page 499 (122 S. E. 103) the court says:

"'The unrestricted rights of the common stockholders to all of the surplus earnings of the corporation after the prior rights of the preferred stockholders have been safeguarded, as well as the limitations of the rights of the preferred stockholders to the cumulative preferred dividend as specified by the contract, are well illustrated by these cases: *Stone* v. *United States Envelope Co.*, 119 Me. 394, 111 Atlantic 536, 13 A. L. R. 422; *Scott* v. *B. & O. R. Co.*, 93 Md. 475, 49 Atl. 327; *Niles* v. *Ludlow Valve Mfg. Co.*, 120 C. C. A. 319, 202 Fed, 141; *Bassett* v. *U. S. Foundry Co.*, 75 N. J. Eq. 539, 73 Atl. 514; *Will* v. *United L. P. Co.* (1912), L. R. 2 Ch. Div. 571 (1914), H. of L. R. A. C. 11.'

"The court is here referring to the rights of the common stockholders to all the surplus earnings of the corporation after provision for the preferred stockholders, and the cases cited include some involving the right to dividends out of the current surplus earnings. Some of the authorities referred to by the court as illustrative of the general question were cases in which the preferred stock was cumulative, and some of them were cases in which the stock was non-cumulative. As these cases are referred to by our Virginia Court of Appeals, they are given the impress of authority in Virginia. It is impracticable for me to review them at any length or to do more than make a brief reference to some of them.

"In the *Niles Case*, the corporation had been very successful, and by a vote of the stockholders and by action of the directors a portion of the earned surplus was distributed among the stockholders by the issuance of general or common stock of the company. It was held that the preferred stockholders were not

entitled to share in this dividend, nor to participate in any dividend after payment of the preferred dividend, as the agreement did not expressly so stipulate. The court held that the laws of New Jersey under which the company was incorporated gave the preferred stockholders a fixed, yearly .dividend payable at all events before any dividend could be paid on the common stock, and that under that law, and the history of the corporation, the preferred stockholders approached nearer to the character of bondholders than of stockholders.

"In the *Stone Case*, the holder of preferred stock was held not to be entitled to equal participation in the surplus of the company with the holders of common stock, and therefore could not be given a preemptive right to purchase treasury stock of the corporation upon an equality with holders of the common stock. A certain amount of stock had been authorized and it was provided that 'any shares of stock not subscribed for at the first meeting may be issued by the board of directors.' Twenty-five hundred shares of common stock which had not been subscribed for was issued by the board, and it was directed that it should be offered to the stockholders, both common and preferred, in proportion to their holdings at $150 a share, a price which was materially below its value. It is manifest that the entire amount of authorized preferred stock had been issued, and under the circumstances it appears that the court very properly sustained the contention of the common stockholders that this additional 2,500 shares of common stock should be confined in its distribution and sale to the common stockholders alone. The court in its opinion does hold in a general way that where preferred shares are given a fixed, preferential dividend at a specific rate, that impliedly negatives

any right to take any further dividends, and cites authorities to that effect.

"The *Niles Case* and the *Stone Case* are both referred to in the *Branch Case*, and, while their authority is not disputed, they are distinguished from the *Branch Case* by the statement that in the *Niles Case* the preferred stockholder was preferred over the common stockholder, as to capital as well as a dividend of eight per cent, and that in the *Stone-Envelope Company Case* the preferred shares had preference over the common stock as to a dividend of seven per cent and also in the distribution of the assets of the corporation. These two cases are to be distinguished from the *Branch Case* not only for these but for other reasons. In the *Branch Case* the corporation was selling new, additional stock. In the *Niles Case* there was a distribution of surplus by declaring a stock dividend, and in the *Stone Case*, there was further sale of one class of stock which had been theretofore authorized but which had not been subscribed to upon the original organization.

"A further review and discussion of these cases is inviting, but would protract this opinion far beyond any legitimate length.

[4] "There are expressions and statements in those cases which learned counsel insist are favorable to the contention of one side or the other in the instant case and which have been dwelt upon in the argument. The appellate courts frequently admonish us that their language and expressions in dealing with a case should be considered with reference to the facts of that particular case being decided and should not be given too wide and general application.

[5] "It is contended by learned counsel for the plaintiff that it is an established, general rule, that since preferred stock is, after all, stock and has attached to

it all rights inherent in general stock except so far as they are limited in its contract, participation in surplus net earnings for any one year accompanies preferred stock as a matter of original right unless the contract under which it is issued expressly provides otherwise, citing several Pennsylvania cases claimed to sustain this rule. It is contended, on the other hand, by learned counsel for the defendant company that the established rule is, in fact, just the contrary—that is, that where a stated preferred dividend is given to preferred stockholders and nothing is said as to payment of further dividends, then the failure to provide for further dividends disentitles preferred stockholders to any additional divisions out of surplus earnings and confines them to the stated, preferred payment. I do not think that either rule can be gathered from the decisions of the courts as a maxim of the law applicable to all cases. In the end it must be remembered that in this class of case, as in the cases of other contracts, we are considering the contract for the purpose of arriving at its intention. It may be that in some cases the failure to make any provision as to participating in excess dividends would naturally be construed as granting such participation, while in other cases the failure to make such provision would be held as a denial of participation. That question must be decided in the light of all the language of the contract, giving effect to every provision in it, and it may be, construing it in the light of the circumstances in which the parties stood.

[6] "The contract, therefore, before the court in this case is to be construed, for the purpose of ascertaining the question at issue here, in accordance with the ordinary principles applicable to the construction of contracts between parties. One of the leading canons

of construction is that every word must be considered and every provision given effect.

"Considering the various features, above mentioned, which distinguish the preferred stock from general stock, we find manifested the intention to allow the holders of the original 600,000 shares to continue themselves as a class confined to that amount of issue so as, if possible, to ensure the maximum dividend of five per cent; thus making this stock not merely preferred but creating, in a sense a separate self-perpetuating body of its holders, subject to redemption, of course, at par, and emphasizing the right to prevent the corporation from so increasing its outgoing payments as to lessen the probability of the five per cent dividend, which was to be paid in preference and priority to any dividend on the common stock. It was held a year ago (in 1925) that the right to the preferred dividend for any one year ceased altogether with the failure of the board to declare a dividend out of the earnings of that year, so that payment of undeclared and unpaid dividends could not be enforced out of the net earnings of subsequent years. *Norwich Water Co.* v. *Southern Ry. Co.*, 11 Va. Law Reg. (N. S.) 203.

[7] "The preferred dividend cannot exceed five per cent for any one year, and it is to be paid after the net profits for that year have been fixed and determined by the board, and only when the dividend is declared from the net profits so ascertained. So far as the preferred dividend is concerned, the outstanding feature of the contract is the authority of the board to ascertain and then in its discretion to distribute the net earnings. The draftsman seems to have had in mind primarily to designate in plain terms what disposition the board might or should make of the net earnings as determined each year. The contract states, in the 'notwithstand-

ing' clause, that when the board does conclude to pay a dividend out of the earnings in any one year, and the five per cent dividend on the preferred stock has been provided for, and the net profits with which the board of directors are dealing still yield a surplus on hand after the five per cent shall have been paid, then the board may declare and pay dividends upon any other stock of the company out of the surplus net profits for that year so remaining. What does 'out of' mean? If the remaining net surplus is $10,000,000 and the board declares a dividend upon 'any other stock' amounting to $9,000,000 is that not an exact compliance with the authority conferred upon them, giving the strictest possible interpretation to the phrase 'out of'? The entire clause relative to dividends must be taken together and each provision read in the light of the other provisions. The two main things dealt with are the fixing of the net profits, and then the directions as to what shall be done with them. Both these matters are, within the contemplation of the contract, placed within the determination of the board, who should and must follow the stipulations of the contract. Briefly stated, the contract certainly says in terms that when, after the preferred stock dividend is satisfied, there remains a surplus, the board shall have power to declare and pay dividends on any other stock than the preferred, out of that surplus. It may be that the phrase 'any other stock' was used in view of the possibility of the future issuance of stock, differing in its provisions from both the original preferred and the common. But the phrase was used at the time when there was no other stock beyond the preferred, except the common, and that situation still remains.

"How can the court limit the power thus conferred upon the board, by declaring that the board *may not*

declare a dividend out of the surplus upon any other stock, without allowing the preferred to participate therein? If the court should so hold, it seems to me, it would be in plain disregard of the provision of the contract—'but, notwithstanding the preference hereby declared, if, after providing for the payment of dividends for any fiscal year on the preferred stock outstanding in such year, there shall remain a surplus of net profits of such year, the board of directors may declare and pay dividends upon any other stock of the company for such year out of such net profits.' Language could not well be more explicit in showing that the intention of the writer was to state that although the five per cent preferred dividend was a prior entitlement of the stock, yet on the other hand, when it was satisfied fully in that respect, the board was at liberty to devote the surplus net profits, without limitation, to dividends upon any other stock then outstanding. In order to hold with the plaintiffs, the court would be obliged to add, after the concluding words of the contract, 'the board of directors may declare and pay dividends upon any other stock of the company out of such net profits,' the following, in order to cover the situation presented by the outstanding common stock, 'but, if such dividend exceed five per cent then the preferred shall participate equally in any excess distributed beyond said amount.' The failure of the draftsman, who was undertaking to state the dividend rights of the preferred stock and of any other stock that might be outstanding, respectively, to so limit the dividend right of the other stock, is almost conclusive. It is to be observed that the draftsman evidently did not intend to omit anything. There is no room here for any inference which might arise in a case in which nothing more is said than to confer a prior dividend right upon

preferred stock.   There is no question here of limitation upon usual rights attaching to stock.   On the contrary the court is asked to limit a dividend right expressly given to *other stock than the preferred,* which can only be done by adding a restrictive provision not in the contract.   It is insisted for the plaintiffs that the language 'non-cumulative dividends at and up to the rate of five per cent with preference and priority to,' etc., is a mere expression of the limit of the priority in payment of dividends, and has no reference to the total dividend payment to the preferred stock out of the net earnings; and the contrary meaning was urged by the defendant.   It is needless to consider this part of the contract alone, for its meaning must be ascertained in the light of all the other terms of the agreement.

[8] "These contract provisions should not be too technically viewed in deciding the question at issue in this case, but we should interpret the language as the average man in the investing public would interpret it.

"If the court should say that the board has not power to pay a larger dividend upon the common stock than the five per cent, would not the court be nullifying the express stipulation in the contract to the effect that the board may declare and pay dividends out of the net surplus?   It may be that without the insertion of this provision the board may have had some degree of power over the surplus net profits left after the preferred stock had been fully satisfied.   The right and extent of that power if not inserted in the contract may have given rise to discussion.   But reading the whole clause as a single sentence from beginning to end, I cannot see why the draftsman who wrote it and who was dealing solely with net profits should have expressly conferred power to pay .dividends, manifestly of any amount, upon the common stock unless he meant to

confine the preferred stock to the preferred dividends and allow the board to declare such dividend as was thought wise in their discretion upon the common stock of the surplus. The very language 'may declare and pay' means the right of action, making any declaration of dividends and paying them; that is, the extent of payment is entirely within the discretion of the board.

[9] "My conclusion, therefore, is that considering the general character of the preferred stock in this instance, which has been referred to, the only fair and reasonable construction which can be placed upon the contract in this case is that after the prior, preferred dividend is paid, the board is permitted and given discretion to pay a dividend, without limitation upon the amount of dividend, upon the common stock out of the surplus net profits.

"In confirmation of my interpretation of the contract, I will refer to only two additional cases, both of which seem to bear directly upon this case.

"The first case is that of *Continental Insurance Company* v. *United States*, 259 U. S. 156, 42 S. Ct. 540, 66 L. Ed. 871. In that case Taft, C. J., was construing the charter of The Reading Company, and it was held that upon dissolution all stockholders, common and preferred, shared alike in the assets of the liquidating corporation where preference was as to dividends and not as to capital, although a portion of the assets to be distributed among the stockholders consisted of accumulated net earnings which might have been applied to dividends upon the common stock in prior years, in which dividends on the preferred stock had been paid and no dividends declared upon the common stock. I refer to this case because the language in which provision was made for the preferred dividend was, in its

general effect, substantially the same as the provision in the charter of the Southern Railway Company. The court says: 'The rights of the common and preferred stockholders of the Reading Company *inter sese* are to be determined by the organization agreement of 1896. At that time, under a special charter of a corporation known as the Excelsior Enterprise Company, granted by the Pennsylvania Legislature in 1871, the Reading Company, by change of name, came into being. The capital stock was increased to $140,000,000, divided into 2,800,000 shares of the par value of $50.00 each. Half of these were preferred, $28,000,000 first preferred, and $42,000,000 second preferred. The other half, or $70,000,000, were common, and the rights of the preferred and common stock were fixed by agreement. Each share of stock, whether common or preferred, had a vote. The agreement provided that the preferred stock should be entitled to non-cumulative dividends "at the rate of, but not exceeding four per cent per annum, in each and every fiscal year, in preference and priority to any payment in or for such fiscal year, or any dividend on other stock; but only from undivided net profits of the company when and as determined by the board of directors, and only if and when the board shall declare dividends therefrom. If, after providing for the payment of full dividends for any fiscal year on the first preferred stock, there shall remain any surplus undivided net profits, the board, out of such surplus, may declare and pay dividends for such year upon the second preferred stock. If, from the business of any particular fiscal year, excluding undivided net profits remaining from previous years, after providing out of the net profits of such particular fiscal year for the payment of the full dividends for such fiscal year on the first and second preferred stock,

there shall remain surplus net profits, the board of directors may delcare, and out of such surplus net profits of such year may pay, dividends upon any other stock of the company.   But no dividends shall in any year be paid upon any such other stock out of net profits of any previous fiscal year in which the full dividends shall not have been paid on the first and second preferred stock.' "

"The stock was non-cumulative, and the right was reserved to redeem the preferred stock at par.   The case, therefore, is very similar to the one in hand.

"In considering the agreement as to dividends upon the preferred and common stock, Chief Justice Taft fixed the rights of the two classes of stock as follows:

" 'The effect of the agreement as to dividends upon the preferred and common stock seems to us clear. It emphasizes that dividends are to be paid only out of undivided profits, and when and as determined by the board of directors, and only if and when the board shall declare them.   It leaves to the board to determine in its discretion whether the undivided profits shall be put in surplus working capital or in dividends.   The limitations on the discretion of the board are that the first and second preferred cannot receive more than four per cent in any fiscal year, and that neither the second preferred nor the common stock can receive any dividend until the first preferred dividend has been paid in full each year, and the common stock receives nothing until the second preferred dividend is thus paid.   The words describing the condition upon which the power of the board to declare dividends on the common stock can be exercised show that each year's profits are to be considered by themselves in the distribution of dividends between the stock.'

"It is to be said in reference to the instant case, as

is said by Judge Taft in the case referred to, that the agreement here emphasizes that dividends are to be paid out of surplus net profits and that they are to be paid when and as determined by the board of directors, and only if and when the board shall declare them. Therefore, here, as there, the contract is dealing with the power of the board and fixing the question of dividends in that manner. It is also true here, as in that case, as stated by Judge Taft, that it was left to the discretion of the board to determine whether the undivided net profits were to be put into surplus working capital or paid in dividends. It is also true here that the language conferring the right to the preferred and to the other dividends, as contemplated, provided for limitations on the discretion of the board, and, as Judge Taft says, in effect, the limitations on the discretion of the board are that the dividends on the preferred stocks must be paid before the common stock can receive any dividends, and the common stock receives nothing until the preferred dividends have been paid. There is no suggestion in the description of the agreement by the court of any limitation upon the discretion of the board, when it comes to exercise its discretion in declaring dividends out of the *surplus* net profits. On the contrary, I think it is quite clear from the method in which Judge Taft's understanding of the contract is stated, that he practically declared that the four per cent dividend on the preferred stock in that case satisfied the preference conferred upon it. Otherwise, the language: 'The limitations on the discretion of the board are that the first and second preferred cannot receive more than four per cent in any fiscal year,' would be meaningless, unless it was intended to state that the four per cent was all that the preferred stock was entitled to.

"While the court was not in that case required to pass upon the exact question at issue here, still it seems to me that the learned court did, as a matter of course, hold that under the language of the stock agreement the preferred stock was confined to the prior dividend to which it was made entitled and could not participate in any further dividends out of the remaining profits in any year after the full dividend on it had been paid.

"*Scott* v. *B. & O. R. R.*, 93 Md. 475, 49 Atl. 327, was in many respects very similar to the case at bar. In the report of the case the arguments of counsel are given at some length, and among those counsel were some of the most eminent corporation lawyers in the country—Mr. John G. Johnson, Mr. Victor Morawetz, Mr. William D. Guthrie and others. The contract before the court in that case was set forth in the certificate of the preferred stock, and, briefly stated, was that the holders of the preferred stock should be entitled to receive in each year out of the surplus net profits of the company for the current year such yearly dividend (non-cumulative) as the board of directors of the railroad company might declare, up to, but not exceeding, four per centum before any dividends should be paid or set apart upon the common stock. It was held that the preferred stock was entitled only to four per cent out of the net earnings of any one year, and that the entire surplus remaining in the net earnings for that year should be devoted to dividends upon the common stock. The preferred and common stocks before the court in that case were issued upon a reorganization, as was the case with the stocks of the Southern Railway Company. There was a plan of organization in that case as in this. The court dwells at length upon the failure of the draftsman of the plan, considering the

conditions under which the preferred stock was to be issued, to provide for participation in the surplus net earnings. That question was as important to the future preferred stockholders of the Southern Railway Company as it was to the stockholders of the Baltimore and Ohio. Here in the instant case, not only was there no failure to make any reference to participation by the preferred stock in the surplus net earnings, but they are expressly referred to and the board is in terms given power, without any limitation upon that power, to declare dividends out of them on the common stock. It should be stated that the court, in concluding its opinion, gives consideration to the use of the language 'up to but not exceeding four per centum,' and holds that under the very brief terms in which the preferred dividend is referred to in that case, the words 'not exceeding' apply to all dividend payments which might be made out of surplus net profits in any one year.

"In the case here, the language is 'up to', and the words 'not exceeding' or the equivalent words 'but not more,' do not occur. Under the contract here which defines in plain terms the exact rights of both classes of stockholders, I do not think that the use of, or failure to use, those words is of any significance.

"Several English cases were referred to in the argument, and I will make reference to two of them, particularly as one case in the House of Lords was referred to in *Johnson* v. *Johnson & Briggs—Will* v. *United, etc., Land Co.*, decided finally in the House of Lords in 1914, and reported in 1 App. Cas. 11, held that in that case the preferred stock was not entitled to participation in dividends out of the surplus remaining after the preferred dividend had been paid; and under the circumstances of that case it was held that it

should be taken to follow, from the fact that no stipulation was made as to further participation, that the preferred stockholder was therefore confined to the preferred dividend agreed upon.

"In the later case of *In Re Fraser and Chalmers* (1919), 2 Ch. D. 114, it was held that the principle approved in the *Will Case* as to the result following upon a failure to provide for participation was confined to participation in dividends, and did not extend to participation in winding up the business upon dissolution and distribution of assets.

"It is impossible for me to undertake to pass upon every subsidiary question raised and dealt with by the learned counsel on both sides in their very exhaustive and comprehensive arguments. It does not seem to me that the question of the inherent rights pertaining to the stock of a corporation can affect in any way the decision of this case, because it should be decided upon the meaning of the contract varying what are the usual attributes of stock and defining the rights of both the common and preferred stock.

"Reference has been made by learned counsel to the papers connected with the efforts to effect a reorganization. I do not find anything in the expressions connected with those negotiations which can operate to avoid in any way the natural construction of the contract before the court.

"The earnings of the Southern Railway Company have been in the past two or three years exceedingly large, as seems to have been the case with a number of the trunk lines of the country in these days of apparent overwhelming prosperity. This seems to put the common stockholder of the defendant company in a very advantageous position, if the preferred stockholder is confined to the five per cent dividend. It

may very well be, and I have no doubt is, a fact that in 1894 it was never contemplated by the organizers of the Southern Railway Company, or by the stockholders, that the corporation would earn such net profits subject to distribution among its stockholders as it is now earning. It must be remembered that the defendant company is a public service corporation, that it is not only subject to the vicissitudes of trade and the depreciation of business and consequent lessening of all traffic, but it is also subject to public control in regard to its earnings as well as to its operating functions.

"Upon the whole case, I am constrained to the conclusion that the contract by which the rights of the preferred stockholders and common stockholders are expressed is plainly to the effect that when the preferred stockholders receive their full dividend up to the limit of five per cent out of the earnings of any one year, then the board of directors can declare, out of the surplus of such net earnings remaining after the full preferred dividend has been paid, such dividends upon the common stock as in their discretion they deem proper and right. The contract was so written and the court has no right to change it.

"The injunction prayed for, therefore, must be denied."

The case has also been argued here elaborately, ably and we believe exhaustively. However far afield we may go in interpreting other cases which have construed other contracts containing provisions somewhat, but not precisely, like those in this contract, we must always end just where we began, and that is with this particular contract, here to be construed.

The question is, does it expressly, or by necessary implication, deny the preferred stockholders the right

of participation claimed? If not, they have that right under the general rule of equality of right as between stockholders; but if their contract does withhold that right, then it is controlling.

That the preferred and common stocks of the Southern Railway are not, and never have been, equal is quite manifest. One outstanding and significant inequality is that the preferred stock may be redeemed and purchased at par. In this particular it is more like a debt which can be paid than like a stock, because the unqualified ownership of stock is the ownership of property, which the stockholder may hold indefinitely and of which he cannot be deprived without his consent. If there were any dividend rights which are not determined by this particular contract, these stocks would, as to such right, be equal, but that the preferred cannot participate in the surplus net profits of any one fiscal year above five per cent is by this contract determined. They cannot participate therein because such surplus net profits are by the contract, in express terms, which seem to us quite plain, allocated as a fund out of which such dividends as may be declared must be paid on stock other than the preferred. How then can any part of these earnings be legally distributed to the preferred stockholders in violation of the unmistakable agreement that these surplus net profits are to be the source, not of dividends to the preferred, but of dividends to any other stock. Other stock, of course, can only mean stock other than the preferred, and the board of directors being authorized to declare dividends to the other stockholders out of those surplus net profits in any one fiscal year, without any condition, express or implied, the power thus vested is an unlimited power. This power to declare dividends out of such surplus net profits to any stock

other than the preferred is not an implied but an express denial of the right of the preferred stockholders to participate further therein.

. The contention that the preferred stock is also a participating stock is based on the most literal construction of the word "preferences" in the clause to be construed. This clause, however, not only specifies the preferred dividend and the other advantages attaching to the preferred stock, but it also limits the dividend which it is entitled to out of the net profits in any one fiscal year, affirmatively by authorizing such dividends therefrom up to five per cent, and negatively by directing the payment of dividends from the surplus net profits thereafter remaining to all stock other than the preferred. The customary or implied right of all stock to participate equally in dividends is thus expressly negatived by this contract. Obviously so, because such excess net profits are otherwise allotted. These expressions are but varying forms of stating the fact that the preferred stock is limited to five per cent dividend in any one fiscal year and cannot participate further in such profits which the contract itself sufficiently expresses without unessential repetition or emphasis. This provision in the contract— that is, the precise allocation of surplus net profits above five per cent in any one fiscal year to stock other than the preferred—is the rock against which all of the arguments for participation therein are shattered and broken, the truth which confuses and refutes every opposing contention.

[10] Our conclusion, then, is that there is no error in the decree, and that the preferred stockholders of the Southern Railway Company are limited to five per cent dividends in any one fiscal year, and cannot participate further in the surplus net profits for such

year because by their contract they have expressly accorded to all of the other stockholders the paramount and hence the exclusive right to have dividends therefrom, subject only to the legal and proper discretion of the board of directors.

*Affirmed.*