**W. Taylor JOHNSON, and Foye K. Johnson, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 6835.**

United States District Court
E. D. Virginia,
Norfolk Division.

Aug. 6, 1969.
As Amended Aug. 12, 1969.

1

**2**

Francis N. Crenshaw, Robert C. Nusbaum, Norfolk, Va., for plaintiffs.

Charles Pekor, Tax Division, U. S. Dept. of Justice, Washington, D. C., Brian P. Gettings, U. S. Atty., Norfolk, Va., for defendant.

WALTER E. HOFFMAN, Chief Judge.

## MEMORANDUM

This action for refund of income taxes paid by the plaintiffs calls for a construction of Internal Revenue Code, section 301 (26 U.S.C., section 301), the facts being largely undisputed and contained in the stipulations filed at the pretrial conference and at trial.

The Mayflower Corporation owned a highrise apartment building at Virginia Beach, Virginia, constructed under the provisions of section 608 of the National Housing Act, 56 Stat. 303, 12 U.S.C., section 1743. The taxpayers acquired fifty-two percent of the corporation's stock in 1949 at a cost of $1,040. The remaining forty-eight percent of the stock was purchased in 1954 from F. A. VanPatten and Martha VanPatten by the taxpayers at a cost of $144,500.

From 1949 until 1963 no distributions were made to stockholders. There was, however, a substantial accumulation which counsel stated at the time of trial was a "depreciation reserve" for equipment in the corporate account entitled "Appreciation of Land and Building." On June 19, 1963, the taxpayers' attorney wrote Johnson recommending a distribution which, in his opinion, could be affected as a tax-free return of capital under section 301 of the Internal Revenue Code. Subsequently, on June 21, 1963, a Board of Directors meeting was held and a resolution was adopted calling for the distribution of $169,000 to be paid June 26, 1963.

In preparing the minutes of the stockholders' meeting, taxpayers' attorney did not specify whether the distribution was to be made on a "pro rata" or "non-pro rata" basis. It is contended by plaintiff, however, that since the clear and admitted intention of the taxpayers was to avail themselves of the benefits of section 301, and since this could not be done if the distribution was pro rata, the distribution must be deemed to have been on a non-pro rata basis.

When the distribution was made, the taxpayers, in the Federal Income Tax return for 1963, treated $13,564.70 as ordinary income because it came from earnings and profits of the corporation. The sum of $145,540 was reported as nontaxable return of capital and $9,895.30 was reported as a capital gain. The Commissioner of Internal Revenue assessed an additional tax in the amount of $17,472.76, plus interest of $3,318.82 on the grounds that the distribution was

pro rata. On June 3, 1967, the taxpayers paid the additional assessment of taxes and interest in the aggregate sum of $20,791.58.

A separate claim for refund was properly filed with the District Director and, receiving no notice of disallowance within six months, the plaintiffs filed this action.

The Internal Revenue Code of 1954, section 301, provides:

"(a) In general.—Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).

\*   \*   \*   \*   \*   \*

"(c) Amount taxable.—In the case of a distribution to which subsection (a) applies—

(1) Amount constituting dividend. —That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income.

(2) Amount applied against basis. —That portion of the distribution which is not a dividend shall be applied against and reduce the adjusted basis of the stock.

(3) Amount in excess of basis.—

(A) In general.—Except as provided in subparagraph (B), that portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock, shall be treated as gain from the sale or exchange of property.

(B) Distributions out of increase in value accrued before March 1, 1913.—That portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock and to the extent that it is out of increase in value accrued before March 1, 1913, shall be exempt from tax."

Treasury Regulation, section 1.316–2 deals with "Sources of distribution in general" and further amplifies the effect of the above-quoted section as follows:

"(e) A reserve set up out of gross income by a corporation and maintained for the purpose of making good any loss of capital assets on account of depletion or depreciation is not a part of surplus out of which ordinary dividends may be paid. A distribution made from a depletion or a depreciation reserve based upon the cost or other basis of the property will not be considered as having been paid out of earnings and profits, but the amount thereof shall be applied against and reduce the cost or other basis of the stock upon which declared. If such a distribution is in excess of the basis, the excess shall be taxed as a gain from the sale or other disposition of property as provided in section 301(c) (3) (A)."

Taken at face value, it would appear that the statute allows a return of capital to a shareholder out of the corporate reserves to the extent that they are not earnings and profits. Without more, the Government concedes that this is so, but contends that where the distribution is to be made with respect to separate blocks of stock acquired at different times and at different bases, the distribution must be pro rata. It is further argued that an aggregation of bases; i. e., a non-pro rata distribution with respect to separately acquired blocks of stock, may not be effected without a legitimate business purpose other than a tax benefit.

The result of the Government's approach is that although the amount of a distribution might be sufficient to return the investment in all stock, the proportionate pro rata distribution would result in a return of basis and additional gain[1] on some block or blocks of stock, and an incomplete return of basis on

1. See I.R.C., section 301(c) (3) (A).

others.[2]  In the instant case, the Government would treat the $155,435.30 in excess of dividend in the following manner: fifty-two percent of that amount would be allocated to the stock acquired in 1949 for $1,040 resulting in a capital gain realized of $79,786; the amount received with respect to the 48 shares acquired in 1954 would be applied to reduce their basis from $144,500 to $69,891.06.  In order to effect a complete recovery of basis the corporation would have to distribute approximately $301,041.62.

■  We do not read the statute as requiring this result.  It is clear that the taxpayers, as directors and sole stockholders of the corporation, intended to, and effectively did make a non-pro rata distribution.

The major portion of the actual trial was taken up with argument over the question of whether the distribution was non-pro rata.  We have no difficulty in finding that it was.  The letters of counsel and the corporate resolution clearly show that the intent was to return the entire capital investment; to pay out $1,040 attributable to the stock acquired for that amount, and similarly $144,500 to the stock acquired for that amount; the remainder to be treated as capital gain.  Although an aggregation of basis is not the ordinary procedure in corporate distributions, business and tax consequences do not rest upon labels.  There is nothing magic about the words "non-pro rata" when the transaction was intended to be and was effected in the manner which the missing label would fit.

■  The taxpayer as well as the Government is entitled to the benefit of the rule that the substance rather than the form of a transaction controls.  Frank Ciaio, 47 T.C. 447, 457 (1969); Helvering v. New Haven & Shore Line Ry. Co., 121 F.2d 985 (2d Cir., 1941), cert. den.

315 U.S. 803, 62 S.Ct. 631, 86 L.Ed. 1203 (1942); Irving Roy et al., T.C. Memo 1968–69, P.H. Memo T.C., paragraph 68,099.  See also United States v. Maryland Jockey Club, 210 F.2d 367, 371 (4 Cir., 1954); United States v. Phellis, 257 U.S. 156, 168, 42 S.Ct. 63, 66 L.Ed. 180 (1921); Tulsa Tribune Co. v. Commissioner of Internal Revenue, 58 F.2d 937 (10th Cir., 1932).

■  The Government contends that under Virginia law there could not have been a non-pro rata distribution unless the right to make such a distribution was stated in the corporate charter.  In support of its position the only authority cited by the Government is Lyman v. Southern Ry. Co., 149 Va. 274, 141 S.E. 240 (1928).  That case involved a dispute between different classes of shareholders.  There the court held that the preferred shareholders were not entitled to share equally with the common stockholders in a distribution beyond that provided for in the preferred certificates.  There is brief dictum in that case that ordinarily any distribution of funds attaches to each share of stock.  We do not think, however, that the dicta in the *Lyman* case would necessarily require a pro rata distribution where, as here, 100 percent ownership of the corporation was vested in the taxpayer and his wife.  Nor do we know of any other Virginia case or statute which would require such a result.  We do not see any corporate policy which should require such a result where both blocks of stock are owned 100 percent by the same two parties, and both such parties consented to the non-pro rata distribution.  The reason for requiring a pro rata distribution (the protection of minority shareholders) is not present here; both shareholders obviously strongly desire the non-pro rata distribution.  *See* 55 A.L.R. 65.

In view of our holding that Virginia law would not prohibit the distribution

---

2.  The statute does not provide for any treatment of a loss, and we accept the Government's argument that any declaration of loss on shares with a basis not fully recovered is postponed until sale or other disposition results in the realized loss.

in this case, we need not consider whether the Government would have standing to raise the point in the first place.

■ Having found that the distribution was, in fact, a non-pro rata distribution or aggregation of basis, the question remains as to whether or not it may validly retain that characterization for Federal Income Tax purposes. We hold that it may despite the Government's contention that the transaction was only a sham with no legitimate business purpose other than a tax savings. The taxpayers have stipulated that the only purpose in effecting the questioned distribution in this particular manner was to "* * * enable plaintiffs to recover tax-free and in full * * * their cost basis of $144,500 in the shares of stock purchased in 1954." We do not read the statute as requiring more.

The Government's detailed discussion in its brief regarding the unavailability of "averaging" or "merging" is based upon the assumption that this transaction is to be treated as a sale. This is a bootstraps argument since the ultimate issue of how much of the distribution section 301(c) requires must be treated as a sale.

The rule requiring a legitimate corporate business purpose for transactions to qualify for certain tax advantages was announced in Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). The Supreme Court said:

> "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted. United States v. Isham, 17 Wall. 496, 506, 21 L.Ed. 728; Superior Oil Co. v. Mississippi, 280 U.S. 390, 395–396, 50 S.Ct. 169, 74 L.Ed. 504; Jones v. Helvering, 63 App.D.C. 204, 71 F.2d 214, 217. But the question for determination is whether what was done, apart from tax motive, was the thing which the statute intended."

The same rule was followed in Bazley v. Commissioner of Internal Revenue, 331 U.S. 737, 67 S.Ct. 1489, 91 L.Ed. 1782 (1947), and the taxpayers were not allowed tax advantages because the transactions were held to be mere devices which disguised distribution of dividends and transfer of securities in the concealed form of corporate reorganization. In the words of the Court "* * * the transaction upon its face lies outside the plain intent of the statute." 293 U.S. at 470, 55 S.Ct., at 268.

Those cases are clearly distinguishable from the instant case. There has been no disguise, no trick or artifice. The distribution was and is what it purported to be. A return of capital is simply that, and the non-pro rata form does not change the posture of the transaction where the investment in the separate blocks of stock was different.

■ It is well settled that amounts received as the return of capital or of investment do not constitute income which may be subject to tax within the meaning of the Sixteenth Amendment. See 7 Mertens, Law of Federal Income Taxation, section 38.24, n. 5 (1967) and cases cited therein.

■ We believe that the statute does not prohibit a tax-free recovery of basis, and that a distribution of corporate funds in a reasonably businesslike manner is justifiable without other crucial business motives or objectives. It simply allows the stockholder to withdraw his original investment out of funds which are not earnings and profits, and to reduce the basis of his stock to zero. No income has been realized and, when the stock is sold or otherwise disposed of, the income realized will be fully taxed. In the absence of cases directly in point, we reason by analogy to Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143 (1931); Inaja Land Co., Ltd., 9 T.C. 727 (1947); 7 Mertens, Law of Federal Income Taxation, section 38.-25, n. 30.

A judgment order will be entered upon presentation.