Florence E. Engle, Appellant, v. Victor A. Talarico, as City Assessor of the City of Niagara Falls, Respondent.

Fourth Department, July 6, 1972.

*Findlay, Hackett, Reid & Wattengel* (*Paul H. Reid, Jr.*, of counsel), for appellant.

*George M. Donohue, Corporation Counsel* (*Jacqueline Koshian* of counsel), for respondent.

GABRIELLI, J. We are called upon to construe the meaning and intent of a statutory enactment granting certain tax exemptions for residential property owned by persons 65 years or older. By chapter 616 of the Laws of 1966, the Legislature enacted section 467 of the Real Property Tax Law which provides that, subject to certain conditions, the property of persons 65 years or older "shall be exempt from taxation by any municipal corporation in which located to the extent of fifty per centum of the assessed valuation thereof", but that "no exemption shall be granted (a) if the income of the owner * * * exceeds the sum of three thousand dollars, or such other sum not less than three thousand dollars nor more than five thousand dollars as may be provided by the local law". In the present case, the City of Niagara Falls duly enacted a local law establishing the sum of $3,600 as the maximum permissible income.

Petitioner, a widow over 65 years of age, made application for the statutory exemption. It appears that petitioner qualifies therefor in every respect except that the respondent contends that her income exceeds the maximum amount permitted. Special Term has sustained the denial of her application upon the stated ground that her income, including social security payments, exceeded $3,600. We have concluded that the application for an exemption should have been granted.

Critical to the resolution of the issue is the definition of "income" for purposes of section 467 of the Real Property Tax Law. At the outset it is significant to note that "the obvious intent of the Legislature [in enacting the section] was to confer a benefit upon certain aged people who have insufficient income available for living expenses" (66 Opn. St. Comp., 1966, p. 928), and we are moved to observe that the avowed purpose and obvious philosophy behind the adoption of the statute was "to help elderly persons living on small, fixed incomes to remain in their homes despite increases in real property taxes, especially taxes for school purposes" (Governor's message of approval of chapter 616 of the Laws of 1966; N. Y. Legis. Annual, 1966, p. 346).

Respondent herein, in denying the application, concluded (1) that the return of capital from an investment in a mutual fund should be treated as income, (2) that no deduction for depreciation in computing rental income should be allowed and (3) that petitioner should not be permitted to offset capital gains by conceded capital losses.

In order to determine an applicant's right to the tax exemption the statute (subdivision 3) provides that "income shall include social security and retirement benefits, interest, dividends, net rental income, salary or earnings, and net income from self-employment, but shall not include gifts or inheritances". Therefore, in view of an absence of an additional legislative definition of the meaning of income, capital, capital gains and net rental income, we must assume that "income", as used in section 467, was intended to be construed in its normal accepted meaning and as understood in common parlance. The establishment of a maximum income was obviously designed as a gauge to determine the need of applicants for such an exemption. We must conclude that the Legislature made a common and fundamental distinction between income and capital. Evidence of this is readily found by the legislative adoption of *income* as the guide and an obvious exclusion of "gifts or inheritances" from income. "Income" has been defined as "the return in money from one's business, labor or capital invested; gain, profits, or private revenue" (Black's Law Dictionary [4th ed.], p. 906). It represents the net proceeds from one's labor or investment.

Respondent does not seriously dispute that the portion of an annuity payment representing the return of the annuitant's original capital investment, is not income. Indeed, "income" may not, and does not, include the return of one's capital from

a mutual fund or annuity (*Southern Pacific Co.* v. *Lowe,* 247 U. S. 330, 337; 7 Mertens, Law of Federal Income Taxation, § 38.24; cf. *Johnson* v. *United States,* 303 F. Supp. 1, 5).

A capital gain represents the proceeds from one's capital investment and should, therefore, be included as income (Internal Revenue Code, § 61, subd. [a], par. [3]; U. S. Code, tit. 26, § 61, subd. [a], par. [3]; 66 Opn. St. Comp., 1966, p. 928). However, for logical reasons, such gains must be offset by any capital losses; and, since these losses exceeded the capital gains, the latter may not be considered as part of the income. Finally, we conclude that "net rental income", as used in the section under scrutiny, requires that depreciation be included in the business expenses which are to be deducted from gross receipts. Section 167 of the Internal Revenue Code (U. S. Code, tit. 26, § 167) provides that as a general rule "there shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear   *   *   *   (2) of property held for the production of income". With no legislative intent to the contrary, we see no reason why this universally accepted indicia of rental income should not be operative here.

By these stated determinations, petitioner's income for 1971 was less than the allowable maximum set forth in the local law. The judgment should be reversed, the petition should be granted, and the requested exemption should be granted.

GOLDMAN, P. J., MARSH, CARDAMONE and HENRY, JJ., concur.

Judgment unanimously reversed on the law and facts with costs and petition granted.